**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No.: 06-228 (ESH)** |
| | : | |
| **v.** | : | |
| | : | |
| **ANNA BOLING** | : | |
| **RODERIC L. BOLING, and** | : | |
| **JEFFREY S. MILLS** | : | |
| **Defendants.** | : | |

**GOVERNMENT'S OMNIBUS OPPOSITION**
**TO DEFENDANTS MILLS AND ANNA BOLING'S MOTIONS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following omnibus opposition to defendant Mills' pretrial motions for: (1) a bill of particulars (#55); (2) discovery of witness list (#61 and #62); (3) request by counsel to examine prospective jurors (#57); (4) disclosure of electronic or other surveillance (#58 and #59); (5) ordering government's proof or for separate hearing to determine existence of conspiracy (#63 and #64); (6) prohibition of prior jury service in similar cases (#65); and (7) limit other crimes or misconduct evidence as to defendant Mills (#66 and #67). The government also herein submits its opposition to defendant Anna Boling's Motion to Exclude Audio Recordings as Evidence Against Her (#54).

**Overview**

Defendants Roderic Boling ( R. Boling), Anna Boling (A. Boling) and Jeffrey Mills (Mills) were integral members of a conspiracy which defrauded numerous investors of at least five different publicly traded stocks. As discussed more fully in the background of Government's Consolidated Opposition to Defendants' Motions to Sever, all three defendants were participants in the conspiracy and stock promotion scheme, and each made significant overt acts in furtherance of its completion.

## I.    DEFENDANT MILLS' MOTION FOR BILL OF PARTICULARS IS WITHOUT MERIT

Defendant Mills has requested the government file a bill of particulars to identify: the names of all co-conspirators; all overt acts not specified in the indictment; time and place of the overt acts; when, where and how each defendant became a member of the conspiracy; and how each defendant aided and abetted the conspiracy.  Although Rule 7(f) of the Federal Rules of Criminal Procedure provides that the court may direct the filing of a bill of particulars to clarify charges in an indictment, not every request for a bill of particulars has merit.  Such is the case here.

### A.    Legal Background

A bill of particulars should be granted only when necessary "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987) (citing United States v. Gorel, 622 F.2d 100, 104 (5th Cir. 1979), cert. denied, 455 U.S. 943 (1980)).  The determination whether a bill of particulars is necessary resides in the discretion of the trial court.  See Butler, 822 F.2d at 1193.

As this Court is aware, "[a] bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's theory of evidence." United Stats v. Brodie, 326 F. Supp.2d 83, 91 (D.D.C. 2004) (Huvelle, J.); accord United States v. Hsin-Yung, 97 F. Supp.2d 24, 37 (D.D.C. 2000) (same) (quoting United States v. Ramirez, 54 F. Supp.2d 25, 29 (D.D.C. 1999)); see also United States v. Matlock, 675 F.2d 981, 986 (8th Cir. 1982) ("[a]cquisition of evidentiary detail is not a function of a bill of particulars."); Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968) ("not the function of a bill of particulars to provide a detailed disclosure of the government's

2

evidence in advance of trial"). The defendant's constitutional right underlying a bill of particulars is to know the offense with which he is charged, not to know the details of how it will be proved. United States v. Glecier, 923 F.2d 496, 502 (7th Cir.), cert. denied, 502 U.S. 810 (1991) (citing, United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982)).

**B.    Defendant Mills Has Been Provided With More Than Sufficient Detail of the Charges in the Indictment and Is Using Rule 7(f) Solely as A Discovery Vehicle.**

Defendant Mills request for a bill of particulars is solely aimed at obtaining a detailed list of the government's proof in advance of trial, and should be denied. Defendant Mills' intent is clear because he already has significant knowledge about the charges in the Indictment and the government's evidence. He has been provided with a twenty-page Indictment - which contains considerable detail as to overt acts and co-conspirators- as well as a statement of fact for co-venturer Michael O'Grady, who has already pled guilty to obstruction of justice. Defendant Mills has also been given volumes of electronic and written discovery, some of which includes a significant amount of material generated by the parallel civil investigation conducted by the Securities and Exchange Commission. In addition, the government has discussed this case with defense counsel on several occasions, and has provided detailed factual information, including a proffer that identified key facts and witnesses in the government's case, and laid out defendant Mills criminal culpability. Given the significant amount of information that has already been shared with counsel, defendant Mills cannot show his entitlement to a bill of particulars. See, e.g., Butler, 822 F.2d at 1193 (where the indictment is sufficiently specific or if the requested information is available in some other form, a bill of particulars is not required); Glecier, 923 F.2d at 502 (demand for a bill of particulars was denied where indictment and government's pretrial disclosures provided

defendants with sufficient information concerning the charges against them); United States v. Marrero, 904 F.2d 251, 258 (5th Cir.) ("when the information requested is provided in some other form, no bill of particulars is required"), cert. denied, 498 U.S. 1000 (1990); United States v. Cisneros, 26 F. Supp. 2d 24, 55-56 (D.D.C. 1998) ("Where a defendant has enough information to understand the charges alleged in the indictment against him and to conduct his own investigation of those charges, the government should not be required to prepare a bill of particulars").

Further, even if this Court were inclined to grant defendant Mills' motion, his request for information strays far beyond the role of a bill of particulars. A bill of particulars is available to defendants to explain the charges against them if the charges in the indictment are unclear or lacking in sufficient detail. See Fed. R. Crim. Proc. 7(c) and (f). Defendant Mills, however, has requested information far beyond what is required, and has requested a wish list of discovery and interrogatories that greatly exceed what is permitted by Rule 7 or 16 (i.e. his request for a list of all overt acts not specified in the indictment, time and place of the overt acts; when, where and how each defendant became a member of the conspiracy; and how each defendant aided and abetted the conspiracy). See Wong Tai v. United States, 273 U.S. 77, 81-82 (1927) (government is not required to specify every overt act it intends to prove at trial); Brodie, 326 F. Supp.2d at 91 (denying bill of particulars for information on "how or when the conspiracy was formed, the details of any meeting or when the defendant joined the conspiracy")(citing United States v. Long, 449 F.2d 288, 294-95 (8th Cir. 1971), cert. denied, 405 U.S. 974 (1972) (affirming denial of time of acts in indictment in bill of particulars)); Ramirez, 54 F. Supp.2d at 30 (even where indictment lacked any detail of conspiracy, denying request for bill of particulars to list of all overt acts made by everyone involved

4

the conspiracy).[1] Given the detailed indictment, and the government's significant voluntary disclosure of information to defendant Mills, his motion for a bill of particulars should be denied.

## II.    DEFENDANT MILLS' MOTION TO DISCOVER GOVERNMENT'S WITNESS LIST IN ADVANCE OF TRIAL IS UNFOUNDED.

Defendant Mills also requests this Court to order the United States to reveal its witness list well in advance of trial.  Counsel admits he has no basis under Rule 16 of the Federal Rules of Criminal Procedure to make such a request and has cited no case in which a court has granted such a motion.  Instead, he merely suggests the matter is one of judicial discretion, citing a single 29 year old case from the Fifth Circuit,[2] and that having the list would aid his avoidance of an ineffective assistance of counsel claim.  Neither of these reasons justify why an exceptional rule needs to be created in this case.  It is well-established that defendants are not entitled to government witness lists in non-capital cases, and that courts will not order an exceptional disclosure unless the defendant can make a "showing of compelling need."  Hsin-Yung, 97 F. Supp.2d at 35.   This case is no different from the numerous other criminal cases pending before this Court, and counsel has stated

---

[1]  See also United States v. Dicesare, 765 F.2d 890, 897, amended by, 777 F2d 542 (9th Cir. 1985) (bill of particulars not warranted when the defendant seeks to obtain the exact date on which the conspiracy began and all the overt acts which comprise the conspiracy); United States v. Armocida, 515 F.2d 49, 54 (3d Cir.), cert. denied sub nom., Gazal v. United States., 423 U.S. 858 (1975) (overt acts not mentioned in the indictment need not be explained in bill of particulars); United States v. Biaggi, 675 F. Supp. 790, 809 (S.D.N.Y. 1987) (defendants not entitled to bill of particulars in which the government would, among other things, specifically state each alleged date, time, person present, place, and nature of conversation concerning the crime).

[2] Nothing in the case cited by defendant Mills suggests that witness lists be shared in advance of trial, rather the case merely states that there is no rule on whether the government must even identify its witnesses prior to calling them during trial, but that courts have discretion to require such identification.  See United States v. Chaplinski, 579 F.2d, 373, 375 (5th Cir.), cert. denied, 439 U.S. 1050 (1978).

no reason why he could not be properly prepared for this trial given his extensive criminal experience. See Filing #48 filed February 28, 2007 (counsel's "Declaration on Motion to Appear Pro Hoc Vice"). The Government asks this Court to reject defendant Mills' request. Should the Court grant Mills' motion, the government seeks for similar relief (i.e. a witness list in advance of trial) from all defendants.

### III.    DEFENDANT MILLS' REQUEST FOR COUNSEL TO EXAMINE PROSPECTIVE JURORS SHOULD BE DENIED

Counsel's request to personally examine prospective jurors is not necessary. The government defers to the Court regarding juror examination and asks for equal treatment should the Court grant defendant's motion. However, the Government does note that a federal court recently denied individual voir dire in the criminal case of United States v. Joseph Nacchio, 05-CR-00545 (D. Colo.), where the government noted:

> There are excellent reasons for not allowing counsel to conduct individual voir dire, as it is a well established technique for coloring jurors' views about the case. See, e.g., Herbert Stern, Trying Cases to Win: Voir Dire and Opening Argument, at 473 (1991 ed.) (explaining that one of the purposes of the voir dire is "to color jurors' views about the case, to inoculate them against your difficulties, to enlist them with your strengths," and observing that this practice "is universally condemned in law books as illegitimate even as it is universally practiced in the law courts"); id. at 504 (suggesting that in voir dire, the lawyer should "advocate your cause and begin to influence the panel").

See Wall Street Journal Online, Peter Lattman, March 21, 2007 (quoting government's opposition motion filed 3/20/07), http://blogs.wsj.com/law/2007/03/21/nacchio-prosecution-uses-sterns-words-against-him/ .

### IV.    Defendant Mills' Motion for Disclosure of Electronic or Other Surveillance Should Be Denied as Moot and Overbroad.

In an extremely broad motion, defendant Mills has moved for an order compelling the United

States to disclose documents and records concerning electronic or other surveillance and pen register data including that which may involve solely his co-defendants, and that which was undertaken by private persons. Defendant also seeks all memoranda of any electronic or other surveillance of oral communications to which any defendant was identified as a party, as well as an order directing the United States "to conduct a search before trial of the files of every federal agency conducting electronic surveillance, investigating defendants, and all agencies cooperating with the same surveilling [sic] and investigating agencies in order to determine whether there has been electronic surveillance described herein."

Given the broadly worded nature of defendant Mills' motion, it is difficult to determine the limits of the disclosure of evidence defendant seeks. To the extent defendant Mills seeks disclosure of whether the United States obtained evidence through wiretaps, or pen registers in the investigation which led to the Indictment in this case, the United States discloses that it did not obtain evidence utilizing wire taps or pen registers, and neither did the SEC or Postal Inspection Service. Government counsel has made available to all of the defendants in discovery the numerous recordings that it has obtained to date from the investigation through voluntary production and search warrant, and which may contain statements by any of the defendants. Many of these recordings were: (1) provided to the SEC by individuals who received fraudulent hoax voicemails; (2) provided by TBC and reviewed pursuant to search warrant; (3) were obtained during the search of TBC computers or CD-Rom disks; (4) in the case of A. Boling's voice exemplar, the recording was provided pursuant to grand jury subpoena; and (5) in the case of the recordings of the outgoing voicemail messages for two cell phone numbers mentioned in fraudulent hoax voicemails, the recordings were made by an SEC employee who called the two cell phone numbers and recorded

what the employee heard when the calls were transferred to voicemail. The United States has also made available to all of the defendants telephone billing records and onebox system emails that it intends to introduce at trial which reflect the telephone numbers from which certain calls originated. Although Mills is not entitled under Rule 16(a) to the statements of his codefendants to law enforcement officials, the United States has provided Mills with summaries of co-defendant statements either in letters to Mills' counsel or by providing Mills' counsel with copies of the discovery letters sent to his co-defendants. See Hsin-Yung, 97 F. Supp.2d at 35 (Rule 16(a)(1) does not require disclosure of codefendant statements).

To the extent that Mills seeks summaries of what he or his co-conspirators said in telephone conversations or face to face conversations with persons who were not government agents and did not make contemporaneous recordings of those statements, it is well settled that Mills is not entitled to such information unless it is exculpatory. See United States v. Tarantino, 846 F.2d 1384, (D.C. Cir. 1988), cert. denied, 488 U.S. 840 (1988) (Under Rule 16 "statements made by the defendant" does not include statements made by co-conspirators of the defendant); United States v. Safavian, 233 F.R.D. 205, 206 (D.D.C. 2006) (written statement containing a non-defendant's reporting of his recollection of statements of the defendant is not disclosable under Rule 16(a)(1)(B)(I)); Hsin-Yung, 97 F. Supp. at 35 (statements by non-law enforcement government witnesses which contain statements made by defendant are not discoverable under Rule 16). Moreover, the United States opposes defendants request for an order directing the United States to conduct a search of the files of every federal agency conducting electronic surveillance, investigating defendants (including co-defendants), and all agencies cooperating with same surveilling [sic] and investigating agencies as overbroad. Although government counsel is not presently aware of any investigative agency that

8

is doing electronic or other surveillance upon defendant Mills, Rule 16 simply does not require the United States to do a search of the files of every federal agency that could possibly be conducting electronic surveillance or investigating Mills. Similarly, Rule 16 does not require the Government to search for and provide Mills with pen register information that has no relevance to the charges against him.

The United States has provided defendants with extremely broad discovery in this case, and believes it has fully complied with its discovery obligations. Mills' Motion for an Order for Disclosure of Electronic or Other Surveillance should therefore be denied.

**V.     NO PRETRIAL HEARING TO ESTABLISH CONSPIRACY OR STOCK PROMOTION ENTERPRISE, OR IDENTIFY CO-CONSPIRATOR STATEMENTS IS NECESSARY.**

Defendant Mills' request for a pretrial hearing to address co-conspirator issues is similarly without merit. To admit co-conspirator or joint venturer statements under FRE 801(d)(2)(E), the government need only prove by a preponderance of the evidence that a conspiracy or joint venture existed between the defendants, and the statement to the recipient was made in furtherance of the conspiracy or joint venture. Contrary to defendant Mills' suggestion, there is no requirement that a conspiracy or joint venture be proven beyond a reasonable doubt. Although not cited by defendant, the Supreme Court has conclusively determined that (1) the Government need prove these preliminary facts by only a preponderance of the evidence and (2) the co-conspirator's statements themselves may be considered as part of the proof of, and the participation of the declarant in, the conspiracy or joint venture. See Bourjaily v. United States, 483 U.S. 171, 176-181 (1987); accord United States v. Gewin, 471 F.3d 197, 202 (D.C. Cir. 2006) (statements admissible if in furtherance of non-criminal stock promotion or joint venture);  United States v. Carson, 455

9

F.3d 336, 365, n.25 (D.C. Cir. 2006) (and noting <u>Bourjaily</u> still valid after <u>Craword</u>).[3]

Similarly, there is no requirement that the Government prove the preliminary facts of the conspiracy or joint venture prior to the disclosure of the "co-conspirator's"[4] statement at trial. Courts in this jurisdiction have long admitted such statements on a conditional basis subject to proof of the conspiracy later during the trial:

> As a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators "subject to connection." If substantial evidence of the connection has not been produced at the close of the government's case, the court will instruct the jury to disregard the hearsay statements; or the court may grant a mistrial.

<u>United States v. Gantt</u> 617 F.2d 831, 845 (D.C. Cir. 1980); <u>accord</u> <u>United States v. Jones</u>, 451 F. Supp.2d 81, 84 (D.D.C. 2006) (Huvelle, J.)  ("It is accepted in this jurisdiction that district courts have discretion to admit co-conspirator statements conditionally, "subject to connection" at the close of the government's case to the three requirements of Rule 801(d)(2)(E)"); <u>see also</u> <u>Gewin</u>, 471 F.3d at 201 (admitting evidence in furtherance of legal joint stock promotion "subject to connection"). Defendant has provided no reason why this established procedure is unfair or unworkable in this

---

[3]  This Circuit additionally requires that there be independent evidence of the conspiracy apart from the statement, although the content of the statement itself can also be considered in determining whether such independent evidence exists.  <u>See</u> <u>United States v. Gatling</u>, 96 F.3d 1511, 1520 (1996); <u>United States v. Beckham</u>, 968 F.2d 47, 50-51 (D.C. Cir. 1992).  The government can more than meet this requirement in this case.

[4]  The government uses the term conspirator and co-conspirator in this motion, but does not limit its response to this motion to statements made by co-conspirators only.  This case involves both a criminal conspiracy and a joint effort by numerous persons to promote stock for profit: this Circuit has made clear that statements made by persons working in concert as part of a joint stock promotion (if in furtherance of that promotion) are admissible under FRE 802(d)(2)(E).  <u>See</u> <u>United States v. Gewin</u>, 471 F.3d 197, 202 (D.C. Cir. 2006).  The government intends to admit statements at trial made by and to stock promoters who furthered the stock promotion, and believes these statements are admissible regardless of whether these persons were involved in the criminal conspiracy.

case.  As this Court recognized in <u>Jones</u>, where there are large number of overt acts alleged in the indictment - in this case 33 acts and a large number of witnesses- there are significant reasons to avoid such pre-trial hearings.  <u>Jones</u>, 451 F. Supp.2d at 85 (denying request in part because "preliminary hearing would be immensely time-consuming and would unnecessarily delay the trial"); <u>see, e.g.</u>, <u>Hsin-Yung</u>, 97 F. Supp.2d at 37 (denying pre-trial hearing which would create a "time-consuming mini-trial before the trial").  Moreover, a pre-trial hearing that attempted to resolve conspiracy or joint venture issues would significantly prolong the proceedings as a whole for another reason: since a pretrial ruling on admissibility would eventually have to be revisited at trial, a pre-trial ruling would be subject to review later during the trial.  <u>See, e.g.</u>, <u>United States v. Pepe</u>, 747 F.2d 632, 653 (11th Cir. 1984) (pretrial ruling in a conspiracy case "is not dispositive on the issue of hearsay, however, because the admissibility of testimony is, ultimately, a trial ruling").  Where, as here, there are a number of statements at issue,[5] and substantial evidence of a conspiracy and joint venture (which includes testimony of Michael O'Grady who has pled guilty and acknowledged his role in the joint enterprise), a pretrial hearing on the substance of the numerous co-conspirator statements would merely slow the trial and provide little benefit.

## VI.    Defendant Mills' Motion to Prohibit Prior Jury Service in Similar Cases Should Be Denied.

---

[5]  The vast majority of co-conspirator and stock promoter statements at issue in this case fall into the following categories, statements made to: (1) defraud investors (i.e. the fraudulent voicemails); (2) distribute and promote these fraudulent voicemails (i.e. timing, planning, notice of new voicemails); (3) coordinate the distribution and sale of stock; (4) further destruction of evidence or obstruction of justice; (5) encourage persons to join or remain in the conspiracy or joint venture; (6) arrange for, designate and/or discuss compensation for the conspiracy or joint venture; (7) avoid detection by government investigations including the Securities and Exchange Commission; and (8) communicate information relevant to the stock promotion between themselves and others.

Defendant Mills has moved to prohibit any juror selected for service in this trial from sitting on "any case similar in fact or legal issue or in any case in which essentially the same government witnesses will testify. . . ."  In support of his motion, Mills cites precedent from the Fifth Circuit which holds that, "absent a showing of overwhelming administrative impracticability in a particular court, once counsel for the government and the defendant have exhausted their peremptory challenges and struck a jury, a designated juror must not sit on similar case or one involving the same witnesses prior to the trial for which he was first selected."  United States v. Mutchler, 559 F.2d 955, 959 (5th Cir. 1977).   This precedent is directed to the specific situation where a jury is selected for a trial, but prior to trial, certain members of the selected jury serve on another jury in a case which involves similar issues or some of the same witnesses that are scheduled to testify at the trial for which the jurors were initially selected.  The rationale for the ruling in Mutchler is that interim jury service in a trial involving similar issues or the testimony of the same witnesses deprives the defendant of the effective use of his peremptory challenges.   Id. at 957-958.

It is unclear from the wording of Mills' motion whether his request to prohibit prior jury service in similar cases is confined to the situation addressed in Mutchler.  To the extent Mills' motion is not confined to the situation of interim jury service discussed in Mutchler, the motion should be denied because Mills' ability to exercise peremptory challenges during the *voir dire* process will not be negatively affected by a prospective juror's service prior to *voir dire* in this case.  Moreover, Mills has not cited any controlling authority indicating that prospective jurors should be *per se* excluded if they have prior jury service in cases involving similar issues or the testimony of witnesses who may testify at his upcoming trial.

To the extent that Mills' motion is confined to the situation of interim jury service, it should

be denied as moot. Trial in this matter is currently scheduled to begin almost immediately after a

jury is selected, and it appears impossible that any of the selected jurors could have interim jury

service. Accordingly, the United States respectfully requests that defendant Mills' motion to

prohibit prior jury service in similar cases be denied.

## VII.    Defendant Mills' Motion in Limine to Prevent Inclusion of Other Crimes Evidence or Uncharged Conduct

On February 23, 2007, the United States filed a motion *in limine* to introduce inextricably

intertwined evidence and evidence of other acts pursuant to Fed.R.Evid. 404(b). This motion

provided a description of the "other acts" evidence the United States intended to introduce at trial,

and a legal discussion as to why this evidence should be properly admitted at trial.[6] Mills did not

file an opposition to this motion, and although he has not addressed the specific Rule 404(b) conduct

discussed therein, Mills has filed a broadly worded motion. See, e.g., Mills Motion in Limine

["Other Crimes and Uncharged Misconduct] at ¶ 1 (Mills requested in his motion for an order

"instructing the Attorney for the Government, his representatives and witnesses to refrain from

making any direct or indirect reference whatsoever. . .of any other extraneous crimes or misconduct

by the accused or other defense witnesses other **than those specifically set out in the indictment**

. . .or any crimes or misconduct until a hearing has been held outside the presence of the jury"

(Emphasis added)). Mills' apparently seeks to limit the ability of the United States to introduce

evidence of any misconduct or acts not specifically set out in the indictment without a prior hearing

---

[6]On February 23, 2007, the United States also filed a Motion *in limine* to introduce
evidence of Roderic L. Boling's prior convictions on cross examination.

13

to determine whether the requirements of Rule 404(b) have been met.[7]  In addition, Mills' motion seeks to limit the United States from being able to cross examine or impeach yet undisclosed defense witnesses pursuant to Rule 609 or Rule 608, without a prior Rule 104(a) hearing, and to prevent the United States from being able to cross examine or impeach him pursuant to Rule 608 without a prior Rule 104(a) hearing.[8]  Mills' overbroad, vague and premature motion should be denied.

As a preliminary matter, the United States relies upon the arguments made in its previously filed motions *in limine* to introduce inextricably intertwined evidence and evidence of other acts pursuant to Fed.R.Evid. 404(b), and evidence of Roderic L. Boling's prior convictions on cross examination.  Mills' present overbroad motion should be denied because it relies in large part upon the false premise that the United States should not be permitted to introduce evidence of misconduct or acts not specifically set forth in the Indictment.  As discussed above in response to Mills' motion for a bill of particulars, indictments are merely required to provide notice pleading of the crimes charged, and are not required to set forth every single act a defendant or his co-schemers or co-conspirators undertook in committing their crimes.  In a conspiracy prosecution, the United States is not limited to proving just overt acts specifically pled in the indictment.  See United States v Zielie, 734 F.2d 1447, 1456 (11th Cir. 1984), cert. denied sub nom., Gustafson v. United States, 469

---

[7]  Mills, citing a Second Circuit case from 1978, also argues that Rule 404(b) evidence is only admissible in the Government's rebuttal case.  The United States is not aware of such a requirement in the D.C. Circuit.  Indeed, United States v. Garner, 396 F.3d 438, 441-445 (D.C. Cir. 2005), upheld a District Court's grant of a pretrial motion to admit Rule 404(b) evidence at trial.  The United States will provide additional briefing on this issue should the Court wish to receive it.

[8]The United States has already notified defendant Mills that it is not aware of any prior convictions of Mills.  Therefore, if Mills elects to testify in his defense, the United States does not anticipate using prior convictions under Fed.R.Evid. 609 for impeachment.

U.S. 1189 (1985); see also United States v. Thai, 29 F.3d 785, 812 (2d Cir.), cert. denied sub. nom,

Tran v. United States, 513 U.S. 977 (1994) (as long as "acts are within the scope of the

conspiracy,""[it] is clear the Government may offer proof of acts not included within the

indictment").  As discussed above in section V, this Court need not have a pretrial hearing when co-

conspirator statements are introduced at trial, and there is no need to have one every time the

government seeks to admit relevant information or acts committed in furtherance of the conspiracy

which are not specifically charged in the indictment.

        Granting defendant Mills' motion would necessitate dilatory hearings at every stage of the

trial.  Given the length of the trial already scheduled, and the government's notice as to 404(b)

evidence, there is no reason to have a separate hearing on all evidence which is intrinsic to the

government's case.[9]  Granting such an order would subject the Court, the defendants, the

government and the Jury, to an extremely inefficient and unnecessary procedure of holding

potentially voluminous hearings outside the presence of the Jury.  Accordingly, the Court should

deny Mills' request to adopt a procedure that is inefficient, not required by the the FRE, and contrary

to the law and practice in the D.C. Circuit.  See Jones, 451 F. Supp.2d at 84 (noting accepted

practice in this jurisdiction to admit hearsay evidence outside of the indictment "subject to

_____

        [9]  Indeed, where the government offers evidence of an act that is part of the charged
offense or conspiracy alleged in the Indictment or committed to further the charged offense, it is
not an "other crime" which would be subject to Rule 404(b) notice requirements.  United States
v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000); United States v. Badru, 97 F.3d 1471, 1474 (D.C.
Cir. 1996), cert. denied, 520 U.S. 1213 (1997).  Some uncharged acts performed
contemporaneously with the charged crime may be properly ruled intrinsic if they facilitate the
commission of the charged crime.  Bowie, 232 F.3d at 929.  Similarly, evidence is intrinsic to
crime charged in the indictment and not subject to the restrictions of Rule 404(b) if "it is an
uncharged offense which arose out of the same transactions as the charged offense [or] if it was
inextricably intertwined with the evidence regarding the offense."  Badru, 97 F.3d at 1474
(quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983).

15

connection").

Likewise, the Court should deny Mills' motion for an order preventing the United States from being able to cross examine or impeach yet undisclosed defense witnesses pursuant to Rule 609 or Rule 608, without a prior Rule 104(a) hearing, and to prevent the United States from being able to cross examine or impeach him pursuant to Rule 608 without a prior Rule 104(a) hearing. Mills' broad motion is premature, as it is impossible to know whether such impeachment is even available for witnesses, who have yet to be identified by Mills. Moreover, there does not appear to be a requirement under the Federal Rules that the United States provide Mills with advance notice of any evidence it might use to impeach non-defendant defense witnesses under Rule 608 and 609, or a defendant under Rule 608. Rule 16(a)(1)(D) merely requires the United States to furnish the defendant a copy of his prior criminal record. To hold the hearings that Mills' suggests would allow him to make a preliminary determination of the government's potential cross-examination of his witnesses even before he decides to call them at trial- such inequity is not required by the rules or law. For the reasons set forth above, defendant's motion in limine ["Other Crimes" and "Uncharged Misconduct"] should be denied.

## VIII.   Defendant A. Boling's Motion *in limine* to Exclude Audio Recordings As Evidence Against Her Should Be Denied.

In a two paragraph motion A. Boling moves this Court to exclude from evidence against her all audio recordings including copies of audio recordings obtained from a computer of an employee of Telephone Broadcast Company ("TBC"). As grounds for her motion, A. Boling contends that the United States does not have originals of the audio recordings, and mistakenly asserts that the United States cannot authenticate the recordings, has no evidence as to when or how the recordings were made, and has no evidence as to the contents or chain of custody of the recordings. Contrary

16

to defendant A. Boling's claims, the United States will be able properly to authenticate under Fed.R.Evid. 901(a) all recordings it intends to introduce at trial, and will similarly be able to introduce evidence as to how the recordings were made and from where they were obtained. Accordingly, A. Boling's motion *in limine* should be denied.

### A.    Legal Background

Fed.R.Evid. 901(a) governing the authentication or identification of evidence as a condition precedent to admissibility merely requires "evidence sufficient to support a finding that the matter in question is what the proponent claims." "The admission of recordings into evidence is committed to the sound discretion of the trial court, so long as the tapes are authentic, accurate, and trustworthy." United States v. Strothers, 77 F.3d 1389, 1392 (D.C. Cir.), cert. denied, 519 U.S. 956 (1996); see also United States v. White, 116 F.3d 903, 920 (D.C. Cir. 1997), cert. denied, 522 U.S. 960 (1997); United States v. Cisneros, 59 F. Supp.2d 58, 63 (D.D.C. 1999). It is well settled in the D.C. Circuit that "absent a showing of bad faith or evidence of tampering, the Government need only demonstrate that as a matter of reasonable probability, possibilities of misidentification and adulteration have been eliminated. White, 116 F.3d at 920-921. "There is no single rigid standard for determining whether a tape recording may be admitted into evidence." United States v. Dale, 991 F.2d 819, 842 (D.C. Cir. 1993), cert. denied, 510 U.S. 1030 (1994). "Tapes may be authenticated by testimony describing the process or system that created the tape [citations omitted], or by testimony from parties to the conversation affirming that the tape contained an accurate record of what was said." Id.

### B.    Audio Recordings to be Presented at Trial

As described below, in this case the United States will authenticate the recordings it intends

to introduce into evidence with testimony: (1) about the TBC system and the process used to make and store the recordings; (2) by persons who received or heard the copies of the recordings on their answering machines, voicemail systems, or telephones and were, in effect, parties to the conversations; (3) from the Postal Inspector who obtained copies of recordings during the search of TBC computer equipment; (4) by the TBC employee who obtained the message from A. Boling from the one box system and saved the fraudulent hoax voicemail recordings to a computer hard drive; and (5) by witnesses to the recording of A. Boling's voice exemplar. In total, there are five categories of audio recordings at issue in this case, all which the United States can and will authenticate at trial.

### 1.    Fraudulent Voicemail Recordings Received by or Recorded by SEC

The SEC received a large number of digital and tape audio recordings from people throughout the United States, who received the fraudulent hoax voicemails described in the indictment, and forwarded copies of the fraudulent hoax voicemails to the SEC. Obviously, any person who made a copy of any of these fraudulent hoax voicemails can easily identify and authenticate the recording of the fraudulent voicemail, and verify that no alterations were made to the recordings before they provided the recordings to the SEC. An SEC employee will also be able to testify that no alterations were made to the recordings during the time they were kept at the SEC. The United States will be able to prove under Fed.R.Evid. 901 that these recordings are exactly what the United States is offering them as: the voicemail recordings that the defendants caused TBC to distribute to answering machines and voicemail systems throughout the United States.

### 2.    Stock Promotion Recordings on TBC System

An employee of the Telephone Broadcast Company kept a digital copy on her computer hard

drive of the fraudulent hoax voicemails described in the Indictment which were distributed by TBC. This employee is expected to testify at trial as to the process utilized to take the prerecorded messages (the fraudulent hoax voicemails which promoted stocks) that were recorded onto the onebox system from A. Boling's home telephone,[10] and load them onto TBC system for distribution to voicemail systems and answering machines throughout the United States. During this process, long pauses in the recordings are sometimes removed, but the content of the voice message was not changed. The employee saved the final message to her computer, and loaded the message onto the TBC system for distribution. The messages saved on the employee's computer are exact copies of the fraudulent voicemail messages that were distributed by TBC. One or more TBC witnesses will therefore be able to identify and authenticate these messages.

In addition, numerous witnesses at trial will be able to identify and authenticate these messages as those that were left on their answering machines or voicemail systems during the relevant time period. The government will also be able to prove that TBC distributed the messages to these victims' specific phone numbers, and that the content of these voicemails was the same as the content in the recordings dropped by A. Boling onto the onebox system. The United States anticipates calling witnesses at trial that will identify the voice contained in the fraudulent hoax voicemails as that of A. Boling. Thus, the United States will be able to meets its burden under Fed.R.Evid. 901 and prove that the recordings obtained from the TBC employee's computer are the recordings that the defendants caused TBC to distribute to answering machines and voicemail systems throughout the United States.

---

[10]The onebox system apparently does not store recordings left on the system for very long. The United States was not able to obtain any recordings from the onebox system during the investigation because they no longer existed.

### 3.    Other A. Boling Recordings on TBC System

During the Postal Inspection Services' search of TBC computers called "boxes" yielded certain other voicemails recorded by A. Boling for R. Boling's satellite television and travel package business, that TBC distributed for R. Boling. These searches occurred in the Postal Inspection Services Forensic Laboratory in Dulles, Virginia. The United States will be able to authenticate these recordings using the testimony of the Postal Inspector(s) who conducted the search, TBC employees who recognize the recordings, and certain other witnesses who were aware of A. Boling's purpose in recording the messages. The United States expects that witnesses at trial will also be able identify the voice on these recordings as that of A. Boling. The United States will be able to prove under Fed.R.Evid. 901 that these recordings are other voicemail messages by A. Boling that were distributed by TBC via the telephone to consumers throughout the United States.

### 4.    Voicemail Greetings on Cellular Phone in Furtherance of the Conspiracy

During the SEC's investigation, a United States Securities and Exchange Commission employee called the cell phone numbers that were referenced in the fraudulent hoax voicemails which touted MAUG and IVFH stock. The SEC employee recorded the outgoing message the employee heard when the voicemail for each cell phone answered the employee's call. The SEC maintained these two recordings and did not alter the recordings. The United States expects that the recordings will be authenticated at trial through the testimony of an SEC employee(s) and/or testimony of people who received fraudulent hoax voicemails concerning MAUG and IVFH and who called the cell phone numbers referenced in the voicemails and heard the outgoing voicemail message for the cell phone numbers. The United States will be able to prove under Fed.R.Evid. 901 that these recordings are recordings of the outgoing voicemail system messages by A. Boling for two

cell phone numbers that were referenced in fraudulent hoax voicemails which promoted the stock of MAUG and IVFH.

## 5.    Voice Exemplars

During the criminal investigation, voice exemplars were provided by A. Boling pursuant to a Grand Jury subpoena.  A court reporter recorded A. Boling's voice as she provided the voice exemplar while she was witnessed by a Postal Inspector.  The United States will be able to authenticate this recording at trial through witness testimony concerning its creation and how the exemplar was stored. There United States will be able to prove under Fed.R.Evid. 901 that this recording is an exemplar of A. Boling's voice.

Because the government can and will easily satisfy the authentication and identification requirements for all of this audio evidence under FRE 901(a) at trial, defendant's motion to exclude the audio recordings should be denied.

For the reasons stated herein, the government requests the court deny defendant Mills' and Boling's in limine motions.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

By:    _____/s/_____
TEJPAL S. CHAWLA
D.C. Bar No. 464012
Jonathan R. Barr
D.C. Bar No. 437334
Assistant U.S. Attorneys
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-2442 (Chawla)
(202) 514-9620 (Barr)

CERTIFICATE OF SERVICE

I hereby CERTIFY that a copy of the foregoing opposition has been sent by ECF filing to counsel for the defendants:

Robert O. Switzer, Esq. (defendant Jeffrey Mills)
Soloman Wisenberg, Esq. (defendant Jeffrey Mills)
Thomas Abbenante, Esq. (defendant Roderic Boling)
Joann Roney Hepworth, Esq.. (defendant Anna Boling)

this 26th day of March, 2007.

_____/s/_____
Tejpal S. Chawla
ASSISTANT UNITED STATES ATTORNEY

22