UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Criminal No. 06-228 (ESH) |
| v. | : |
| JEFFREY S. MILLS, RODERIC L. BOLING, AND ANNA BOLING | : |
| Defendant. | : |

**UNITED STATES' MEMORANDUM IN OPPOSITION TO
DEFENDANT ANNA BOLING'S MOTION TO DISMISS COUNTS THREE THROUGH
NINE OF THE INDICTMENT AND TO DISMISS IN PART COUNT ONE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this memorandum in opposition to defendant Anna Boling's motion to dismiss counts three through nine of the Indictment and to dismiss in part count one of the Indictment. Defendant Anna Boling's motion to dismiss is based upon the incorrect and faulty premise that the Indictment fails to allege a scheme to defraud an identifiable class of victims and fails to allege that the defendants engaged in a scheme to defraud and to obtain money or property. For the reasons set forth herein, respectfully requests that defendant Anna Boling's motion to dismiss be denied.

**I.    BACKGROUND**

On July 27, 2006, a federal grand jury returned a nine count indictment charging defendants Jeffrey S. Mills, Roderic L. Boling and Anna Boling with conspiracy to commit securities fraud and wire fraud (18 U.S.C. § 371), securities fraud (15 U.S.C. §§ 78j(b) and 78ff), and wire fraud (18 U.S.C. § 1343) in connection with their scheme to artificially inflate the market price and volume of the following publicly traded companies, and to fraudulently induce

investors to purchase shares of the common stock of the following publicly traded companies at artificially inflated prices: Maui General Stores, Inc. ("MAUG"), Innovative Food Holdings, Inc. ("IVFH"); Power3 Medical Products, Inc. ("PWRM"), Donini, Inc. ("DNNI"), and 5G Wireless Communications, Inc. ("FGWC"). The Indictment also charged that another purpose of the defendants' conspiracy was to profit from their illegal promotion of the stocks identified above, and to conceal their criminal scheme and activities from the United States Securities and Exchange Commission, the securities markets, and the actual and prospective investors in the stock of MAUG, IVFH, PWRM, FGWC and DNNI. The indictment further alleged that the defendants utilized fraudulent hoax voicemails to fraudulently induce investors to purchase the stocks identified above and to artificially inflate and manipulate the prices of those securities.

On April 26, 2007, defendant Anna Boling filed a motion to dismiss counts three through nine of the Indictment and to dismiss in part count one of the Indictment. Defendant essentially seeks the dismissal of all wire fraud charges and the wire fraud portion of the conspiracy charge based upon the following non-meritorious arguments: (1) the wire fraud counts and wire fraud portion of the conspiracy count in the Indictment do not allege a scheme to defraud an identifiable class of victims; (2) while securities fraud can be premised upon a fraud on the market theory or activities to manipulate the prices of securities, wire fraud cannot be sustained on such a theory; and (3) the wire fraud charges cannot be sustained because the Indictment purportedly does not allege that the defendant's scheme was intended to obtain money or property from another. Because defendants' arguments have no merit and the Indictment alleges all of the elements of the offense of wire fraud, defendants' motion to dismiss should be denied.

**II.    DEFENDANT'S MOTION TO DISMISS IS NOT WELL FOUNDED AND SHOULD BE DENIED.**

    **A.    THE INDICTMENT ALLEGES AN IDENTIFIABLE CLASS OF VICTIMS OF THE WIRE FRAUD.**

Defendant incorrectly concludes, based upon a strained and narrow interpretation of the Indictment, which relies upon reading certain passages of the Indictment in isolation, that the Indictment does not allege an identifiable class of victims of wire fraud, and seeks to have this Court dismiss the wire fraud counts of the Indictment on that basis.  As a preliminary matter, defendant's effort to read parts of the Indictment in isolation is incorrect.  See, United States v. Blinder, 10 F.3d 1468, 1473 (9th Cir. 1993)("indictment should be read as a whole and read to include facts which are necessarily implied").  Despite defendant Anna Boling's argument, the Indictment clearly identifies a discrete class of victims of the defendants' scheme and conspiracy to commit wire fraud:  it charges the defendants with causing the creation and nationwide distribution of fraudulent hoax voicemails to telephone answering machines and voicemails systems of potential investors who they believed would likely purchase shares of stock of MAUG, IFVH, PWRM, DNNI, and FGWC at artificially inflated prices during the defined time period of in about July and August 2004.  See  Indictment ¶¶  14 through 21 and ¶ 13.  Moreover, their intent in executing their scheme was to fraudulently induce investors to purchase the touted securities at artificially high prices and to profit from their scheme.  See Indictment ¶¶ 14 through 23, 13.  Indeed, Paragraph twelve of the Indictment alleges that it was a goal of the conspiracy for the defendants, "to unlawfully enrich themselves by engaging in a scheme to artificially inflate the market price of and market demand of the following companies, and to fraudulently induce investors to purchase shares of the common stock of the following

3

companies: MAUG, IVFH, PWRM, FGWC and DNNI." As such, there is no question that the Indictment amply provides the defendants with notice that the identifiable class of potential victims of their conspiracy and scheme to defraud includes all the prospective investors who received or heard the fraudulent hoax voicemails, and any investor who purchased the touted securities at inflated prices because of the defendant fraudulent stock promotion scheme (including purchasers who heard the voicemails and those who did not). This discrete class of potential victims of course includes the people identified in the Indictment as having received the voicemails. See Indictment at ¶¶ 43-54, and 63. Importantly, defendant Anna Boling cites no case that specifically requires a wire fraud indictment to identify any and all of the victims that the defendants were intending to deceive.[1] Nonetheless, even assuming *arguendo* that the Indictment is required to allege an identifiable class of intended victims of the scheme to defraud, the Indictment meets this requirement.

---

[1] The primary case cited by defendant to suggest that the wire fraud counts of the Indictment are required to allege an identifiable class of intended victims of the scheme to defraud, is inapposite. In Milwitt, the Ninth Circuit reversed a bankruptcy fraud conviction for insufficient evidence in a case where there appeared to be a fatal variance of proof at trial. United States v. Milwitt, 475 1150, 1154-1161 (9th Cir. 2007). While the Indictment in Milwitt charged the defendant with a scheme to defraud certain landlords, the government apparently only proved a scheme to defraud the defendant's customers, who were tenants and not creditors in the bankruptcy proceeding. Id. at 1156-1159. The Milwitt indictment did not charge a scheme to defraud the tenants. Id. The Court therefore reversed the conviction because there was no proof offered at trial that the defendant devised a scheme to defraud creditors (the landlords) of money and filed petitions in bankruptcy with specific intent to execute or further the scheme. Id. at 1159.

### B.   WIRE FRAUD IS APPLICABLE WHERE A STOCK MANIPULATION SCHEME OR FRAUD PERPETRATED ON "INVESTORS" OR "THE MARKET" IS ALLEGED.

Defendant's second argument narrowly characterizes the scheme charged in the Indictment as a fraud scheme solely perpetrated on "the market" or "investors" to artificially increase and manipulate the price of securities, and incorrectly argues that such a scheme cannot be charged as a wire fraud scheme.  In sum, Defendant contends that while such a scheme "falls within the ambit of the securities fraud laws," it does not constitute wire fraud.  Even if the Court were to accept defendant Anna Boling's constrained and deficient characterization of the Indictment, the wire fraud charges would be proper.  In United States v. Charney, 537 F.2d 341, 346-353  (9th Cir.), cert. denied, 429 U.S. 1000 (1976), the Ninth Circuit addressed the issue of whether a scheme to manipulate the price of securities in order to defraud shareholders and the directors of a corporation could properly constitute wire fraud.  The Charney Court reversed the district court's dismissal of the indictment, and ruled that an indictment charging a violation of the wire fraud statute arising out of an alleged manipulation of securities prices in connection with a corporate takeover did allege the crime of wire fraud.  Id. at 352-353; see also United States v. Downing, 297 F.3d 52, 57-58 (2nd Cir. 2002)(defendants' conviction for conspiracy to commit securities fraud and wire fraud upheld in pump and dump securities fraud case; defendants were accountants, who prepared false audit reports).

### C.   INDICTMENT PROPERLY ALLEGES ALL OF THE ELEMENTS OF WIRE FRAUD.

Defendant's third argument relies on no applicable case law, and similarly lacks merit.  In the D.C. Circuit, the Government must prove the following elements in order to establish a wire fraud violation:  (1) the defendant knowingly and willingly entered into a scheme to

defraud, and (2) an interstate wire communication was used to further the scheme.  See United States v. Alston-Graves, 435 F.3d 331, 337 (D.C. Cir. 2006).  The Indictment returned against defendant Anna Boling alleges both of these essential elements.  Notwithstanding that the Indictment alleges the elements of the crime of wire fraud, defendant Anna Boling contends, based upon her narrow reading of the Indictment, that the wire fraud counts and the portion of the conspiracy count concerning wire fraud should be dismissed because the Indictment purportedly does not allege that the defendants' scheme was intended to obtain money or property of another.

Defendant's narrow reading of the Indictment is not justified, see Blinder, 10 F.3d at 1473 ("indictment should be read as a whole and read to include facts which are necessarily implied"), and any fair reading of the Indictment confirms that the Indictment does in fact allege a scheme to defraud that was intended to obtain money and property of others.  The Indictment alleges a scheme to create and distribute fraudulent hoax voicemails to telephone answering machines and voicemails systems to fraudulently induce unwitting investors to purchase shares of stock of MAUG, IFVH, PWRM, DNNI, and FGWC at artificially inflated prices during the defined time period of in about July and August 2004.  See Indictment ¶¶ 14 through 21 and ¶ 13.  These investors were defrauded into giving up money and property by purchasing the stock at prices manipulated by the defendants.  As will be proved at trial, several of these investors lost money as a result of the defendants' scheme to defraud.  In addition, the Indictment alleges that co-conspirators and co-schemers directly and collectively profited from the scheme.  See Indictment at ¶¶ 22, 23, 24-27, 32, 35, 39, 41, and 56.  Specifically, defendant Mills received cash and stock, as well as promises of stock for executing the stock promotion scheme, and

defendant Roderic Boling received cash. Id. Defendant Anna Boling also benefitted from monies received from defendant Roderic Boling. Id. at ¶ 3. Indeed, one of the purposes of the conspiracy was for the defendants to enrich themselves by engaging in a scheme to artificially inflate the market price of the stock, and to fraudulently induce investors to purchase shares of the common stock. Id. at ¶ 12. As this Court is aware, wire fraud can be proven both by what is made as well as what is taken. See Blinder, 10 F.3d at 1473 ("pecuniary gain, as well as loss, will satisfy the requirement"). The Indictment in the case at bar more than adequately alleges a scheme to defraud and to obtain money or property.

The D.C. Circuit Court ruling in United States v. Madeoy, 912 F.2d 1486, 1492 (D.C. Cir. 1990), cert. denied, 498 U.S. 1105 (1991) is instructive. In Madeoy, the Court ruled that the wire fraud statute protects intangible property as well as the right to decide how to use that property. Id. In addition, the D.C. Circuit held an indictment sufficient which charged that defendant's scheme had caused the Government to commit itself to pay back certain loans which the Government would not otherwise have agreed to do, thereby causing it to lose money. Id. The indictment in Madeoy also alleged that the defendant's object was to reap financial gain from the scheme. Id. Based upon these allegations, the D.C. Circuit ruled that the indictment therefore alleged a scheme for which the jury could properly convict the defendants of wire fraud. Id. As in Madeoy, the Indictment in this case properly alleges wire fraud.

### III. CONCLUSION

For the reasons set forth herein, as well as such reasons that may be stated orally at any hearing or in any supplemental brief, the United States respectfully requests that defendant Anna Boling's motion to dismiss counts three through nine of the Indictment and to dismiss in part

count one of the Indictment be DENIED.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        for the District of Columbia

By:      /s/
        JONATHAN R. BARR
        D.C. Bar No. 437334
        TEJPAL S. CHAWLA
        D.C. Bar No. 464012
        Assistant U.S. Attorneys
        555 4th Street, N.W.
        Washington, D.C.  20530
        (202) 353-2442 (Chawla)
        (202) 514-9620 (Barr)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of May 2007, I have caused a copy of the United States' Memorandum in Opposition to Defendant Anna Boling's Motion to Dismiss Counts Three Through Nine of the Indictment and to Dismiss in Part Count One of the Indictment be delivered electronically by ECF to the following counsel for the defendants:

Thomas Abbenante, Esq.
Robert O. Swtizer, Esq.
Leslie McAdoo, Esq.

                                                    _____/s/_____
                                                    JONATHAN R. BARR
                                                    ASSISTANT U.S. ATTORNEY