# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                      )
**UNITED STATES**                     )
                                      )
    **v.**         )    **Crim. No.  06-228 (ESH)**
                                      )
**JEFFREY MILLS,** *et al.*,          )
                                      )
    **Defendants.** )
_____ )


## <u>PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS</u>

# Preliminary Jury Instrctions

## INSTRUCTION TO DEFENDANT(S) ON BOND
## AT BEGINNING OF TRIAL

## Form Instruction 1.01

As a condition of your release, you must be in the courtroom at all times during this trial unless I excuse you. If you willfully fail to appear at any time, or fail to appear on time, an arrest warrant may be issued for you, and you may be prosecuted for bail jumping. If you have posted bond, your bond may be forfeited. If you are convicted of bail jumping, you can receive an additional term of imprisonment, a fine, or both. In this case that means up to 10 additional years in jail and an additional fine of up to $250,000.

If you are voluntarily absent from any portion of this trial, I will conclude that you have waived your constitutional right to be present. That means you will have given up your right to confront the government's witnesses and to testify yourself. If you are voluntarily absent, the trial will still go on without you until the jury hears all the evidence and returns a verdict.

## PRELIMINARY INSTRUCTION BEFORE TRIAL

## Form Instruction 1.03 (including 1.02 and 1.21)

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions which I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. It is my practice to allow jurors to take notes during the trial if they want to, and to have their notes with them during the jury's deliberations. I want to emphasize that none of you are required to take notes. Indeed, you should not do so if you think that notetaking will distract your attention from the evidence or the testimony of the witnesses. On the other hand, if you think that taking notes might help you remember the testimony of the witnesses and the other evidence in the case, or might make you pay more attention during the trial, you are free to take notes. You should remember that your notes are only an aid to help your memory. They should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Whenever there is a recess in the trial, you should leave your notebooks and pencils on your seats. They will be collected by the clerk and given to me to keep. No one, including myself, will

ever look at any of your notes.  At the end of the trial, when you come back to the courtroom to

deliver your verdict, your notes will be destroyed.  Again, neither I nor anyone else will look at any

notes you have taken.

You have probably noticed that there are sixteen (16) of you sitting in the jury box.  Only

twelve (12) of you will retire to deliberate in this matter.  In some courtrooms, jurors in seats 13

through 16 are automatically the alternates, but that is not how it works in this courtroom.  Instead,

we randomly select the alternates' seats at the beginning of each trial from among all the jury seats

so that any four seats might turn out to be the seats of the alternates.

I will not disclose who the alternate jurors are until the end of my final instructions just

before you begin your deliberations.  Therefore, it is important that all of you think of yourselves

as regular jurors during this trial, and that all of you give this case your fullest and most serious

attention.

At the beginning of the jury selection process, you were provided with a list of names of

potential witnesses or people who might be named during the trial.  If, at any time during this trial,

you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in

the testimony or evidence, or anyone else connected with this case in any way, you should tell the

court immediately.  You should not tell any other member of the jury about your discovery.  If you

realize you are acquainted with someone connected with this case while a witness is testifying, you

should raise your hand immediately and ask to speak privately to the Marshal or with me at the

bench.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case. This is a criminal case which began when the grand jury returned an Indictment. Two Assistant United States Attorneys will present the evidence in support of the charges in the Indictment.

*The defendants in this matter, Jeffrey Mills, Roderic Boling, and Anna Boling have been charged by a Grand Jury in an Indictment with one count of conspiracy to commit securities fraud and wire fraud, one count of securities fraud, and seven counts of wire fraud. Count One of that Indictment, which charges each of the defendants with conspiracy to commit securities fraud and wire fraud, reads:*

> 10. *The defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING used fraudulent hoax voicemails to fraudulently promote the stock of the following companies:*
>
> A. *American Multiplexer Corp. ("AMUT") was a data distribution and compression provider incorporated under the laws of the State of North Carolina with its principal place of business in Sunnyvale, California. AMUT's common stock was publicly traded under the ticker symbol "AMUT" on the Pink Sheets, a price quotation system primarily used for trading the securities of small corporations that do not meet the minimum listing requirements of a national securities exchange.*
>
> B. *Donini, Inc. ("DNNI") was a pizzeria franchise management company incorporated under the laws of the State of New Jersey with its principal place of business in Canada. DNNI's common stock was publicly traded under the ticker symbol "DNNI" on the Over the Counter Bulletin Board, an electronic price quotation system primarily used for trading the securities of corporations that do not meet the minimum listing requirements of a national securities exchange.*
>
> C. *5G Wireless Communications, Inc. ("FGWC") was a wireless broadband*

-5-

*retailer incorporated under the laws of the State of Nevada with its principal place of business in Marina Del Rey, California. FGWC's common stock was publicly traded under the ticker symbol "FGWC" on the Over the Counter Bulletin Board.*

D.     *Innovative Food Holdings, Inc. ("IVFH") was a food distributer to restaurants. IVFH was incorporated under the laws of the State of Florida, and had its principal place of business in Naples, Florida. IVFH's common stock was publicly traded under the ticker symbol "IVFH" on the Pink Sheets.*

E.     *Maui General Store, Inc. ("MAUG") was a retailer incorporated under the laws of the State of New York with its principal place of business in Hana, Hawaii. MAUG's common stock was publicly traded under the ticker symbol "MAUG" on the Over the Counter Bulletin Board.*

F.     *Power3 Medical Products, Inc. ("PWRM") was a healthcare and development stage biotechnology company incorporated under the laws of the State of New York with its principal place of business in The Woodlands, Texas. PWRM's common stock was publicly traded under the ticker symbol "PWRM" on the Over the Counter Bulletin Board.*

G.     *Twister Networks Inc. ("TWTN") was a telecommunications company publicly traded under the ticker symbol "TWTN" on the Pink Sheets.*

### ***THE CONSPIRACY***

11.     *From in or about July 2004, through in or about August 2004, in the District of Columbia and elsewhere, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING, together with others known and unknown to the Grand Jury, unlawfully, willfully, and knowingly did conspire, confederate, and agree together with each other to commit offenses against the United States, to wit, to commit:*

(A)     *Securities Fraud, that is to willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly, use and employ manipulative and deceptive devices and contrivances in violation of 17 C.F.R. § 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person in connection with the purchase and sale of securities, all in violation of 15 U.S.C. §§ 78j(b) and*

78ff; and

(B)    Wire Fraud, that is, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to willfully and knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343.

12.    It was a goal of the conspiracy for defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING, together with others known and unknown to the Grand Jury:  (A) to unlawfully enrich themselves by engaging in a scheme to artificially inflate the market price of and market demand for the common stock of the following companies, and to fraudulently induce investors to purchase shares of the common stock of the following companies: MAUG, IVFH, PWRM, FGWC and DNNI; and (B) to conceal these criminal activities from the United States Securities and Exchange Commission ("SEC"), the securities markets, and the actual and prospective investors in the stock of MAUG, IVFH, PWRM, FGWC and DNNI.

13.    At various times in or about July 2004 through August 18, 2004, defendants RODERIC L. BOLING, JEFFREY S. MILLS and ANNA BOLING caused TBC to broadcast fraudulent hoax voicemail messages containing the voice of ANNA BOLING to voicemail systems and answering machines throughout the United States, including within the District of Columbia, that were intended to deceive prospective investors into believing they had inadvertently received a confidential stock tip intended for the close friend of the person leaving the voicemail message on their voicemail/answering machines.  The fraudulent hoax voicemail campaigns touting the stocks of MAUG, IVFH, PWRM, DNNI and FGWC resulted in material increases in the price and volume of each of the stocks.

### MANNER AND MEANS OF THE CONSPIRACY

To further the objects and goals of the conspiracy, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING, together with others known and unknown to the Grand Jury, would and did use the following manners and means, among others:

14.    It was part of the conspiracy that defendant JEFFREY S. MILLS would agree to publicize and promote the stock of certain publicly traded companies in return for stock or cash compensation, all the while intending to promote the stock with hoax voicemails designed fraudulently to induce unwitting investors to purchase the stock and thereby artificially inflate and manipulate the market price and

*market demand for the stock.*

15.    *It was further part of the conspiracy that defendant RODERIC L. BOLING engaged the services of TBC to broadcast voicemail messages touting several publicly traded stocks, and instructed TBC to perform the voicemail campaign in a manner designed to conceal from persons receiving the stock tout voicemails that they were receiving hoax misdirected voicemails. For example, BOLING instructed Michael O'Grady, an owner of TBC, that the stock tout messages should never be broadcast to the same number twice, and that the recorded message should only be played to an answering machine or voicemail system.*

16.    *It was further part of the conspiracy, in order to conceal the involvement of BOLING and his co-conspirators in the hoax voicemail campaign and to make it more difficult for law enforcement authorities, victims and regulators to investigate the campaign, that defendant RODERIC L. BOLING:*

    A      *at the beginning of the campaign, instructed Michael O'Grady that: knowledge of the voicemail campaign be kept to a minimum of TBC's employees; all orders for the voicemail campaign would be done over the telephone; BOLING did not want e-mails or written reports utilized during the campaign; and the campaign would be paid for completely in cash; and*

    B      *toward the end of the campaign and at the end of the campaign, instructed Michael O'Grady to delete and destroy certain records and files at TBC that were related to RODERIC L. BOLING and the fraudulent hoax voicemail campaign.*

17.    *It was further part of the conspiracy that defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused the creation and nationwide distribution of hoax voicemail messages containing the voice of ANNA BOLING to fraudulently induce unwitting investors to purchase shares of stock at artificially inflated prices. Each hoax message purported to be a message left by a woman for her close friend in which she attempted to convey to her close friend a hot stock tip from a "hot stock exchange guy" that she was or had been dating, whose previous stock tip had been accurate and very lucrative for her father. By design, each hoax message was made to appear to have been mistakenly left on the listener's answering machine or voicemail system rather than on the close friend's system or machine. Each hoax message was also made to appear to have been left on a single machine. In truth and in fact, as the co-conspirators well knew, each "misdirected" hoax message contained a fictitious stock tip which was intentionally distributed to thousands of answering machines/voicemail systems throughout the country for the purpose of artificially inflating and*

*manipulating the market price of, and demand for, the stock touted in each message.*

18. *It was further part of the conspiracy that defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused the distribution of hoax voicemail messages containing the voice of ANNA BOLING which made the following misrepresentations to the listener:*

    A.    *falsely represented that the company, whose stock was touted in the message, was going to make a big news announcement that week;*

    B.    *falsely represented that the person leaving the voicemail message and her father were both going to be buying a bunch of the touted securities the following day;*

    C.    *falsely represented that the person leaving the voicemail had only told her father and two other people about the stock tip;*

    D.    *falsely represented that the stock tip was "kind of a secret;" and*

    E.    *falsely represented that the person leaving the voicemail was still in New York.*

19. *It was further part of the conspiracy that defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused the distribution of hoax voicemail messages touting the stocks of MAUG, IVFH, FGWC, PWRM, DNNI, AMUT and TWTN to unwitting prospective investors throughout the United States which were substantially similar to the following:*

*Hey Steph, it's Wendy. I looked for your old number and I couldn't find it but Brady says this is your new one. I hope it's the right one. Anyway, remember Evan, that hot stock exchange guy I'm dating – he gave my dad that hot stock tip in June on SMSI and it went from a buck to like five bucks in two weeks and you were mad because I didn't call you? Well, I'm calling you now. There's this new company that supposedly developed some zillion dollar cancer test thing, and it's going to go up big this week – some patent thing, whatever that is. Anyway, the stock symbol is P-W-R-M, and he says it gonna open cheap, like $2.50 – I'm sorry, I'm eating 'cause I'm starving – it's $2.50 now and it's going to take off after this weekend so get as much as you can. Call me on my cell phone, okay. I'm still in New York. Um, my dad and I are going to be buying a bunch tomorrow and the only people I told is Sam and Ellen–it's kind of a secret. Okay, so give me a call or email me. I love you. Bye.*

20. *It was further part of the conspiracy that defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused the distribution of a fraudulent hoax voicemail message recommending the purchase of MAUG stock*

which fraudulently predicted without a reasonable basis that the price per share of MAUG stock would "go up to five or six bucks this week."

21.   It was further part of the conspiracy that defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING fraudulently did not disclose to recipients of the hoax voicemail messages that persons responsible for distributing the messages recommending the purchase of the stocks touted in the messages were being compensated or had been promised compensation for distributing the voicemail messages with buy recommendations.

22.   It was further part of the conspiracy that JEFFREY S. MILLS, in order to profit from the fraudulent scheme:

A.   caused 250,000 shares of IVFH stock to be deposited into the securities brokerage account of Direct Results at Sun State as payment for promoting the stock of IVFH;

B.   utilized the Direct Results brokerage account at Sun State to sell approximately 220,000 shares of IVFH stock during the time that IVFH stock was being promoted with fraudulent hoax voicemails;

C.   instructed D.B. to transfer a large number of shares of DNNI and FGWC stock to a brokerage account at Sun State in the name of a company controlled by R.B. as payment for a promotion of DNNI and FGWC stock.

23.   It was further part of the conspiracy that defendants JEFFREY S. MILLS and RODERIC L. BOLING, in order to profit from the scheme, traveled to Gulfport, Mississippi to collect a bag of cash as payment for distributing fraudulent hoax voicemail messages touting a publicly traded security.

The Indictment goes on to set out 33 separate acts, known in the law as overt acts, which the grand jury charges were committed by members of the conspiracy to advance the conspiracy and accomplish the goals of the conspiracy.  I will discuss those overt acts with you in my final instructions to you at the close of all the evidence in this case.

Count Two of the Indictment charges each of the defendants with Securities Fraud, includes the statement I just read and the 33 overt acts, and alleges:

59.   On or about August 16, 2004, in the District of Columbia and elsewhere,

-10-

defendants JEFFREY S. MILLS, RODERIC L. BOLING, and ANNA BOLING, together with others known and unknown to the Grand Jury, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and a course of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of the common stock of Power3 Medical Products, Inc.

Counts Three through Nine of the Indictment, charges each of the defendants with seven counts of Wire Fraud, includes the statements I just read relating to the alleged conspiracy and the 33 overt acts, and alleges:

63.    On or about the dates set forth below, in the District of Columbia and elsewhere, defendants JEFFREY S. MILLS, RODERIC L. BOLING, and ANNA BOLING, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice, did cause to be transmitted in interstate commerce, by means of wire communications, the signs, signals, and sounds, as set forth below:

| COUNT | DATE | INTERSTATE WIRE COMMUNICATION |
|-------|------|-------------------------------|
| THREE | 8/16/2004 | Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of T.S. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played. |

-11-

| | | |
|---|---|---|
| *FOUR* | *8/16/2004* | *Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of W.W. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played.* |
| *FIVE* | *8/16/2004* | *Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of L.B. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played.* |
| *SIX* | *8/16/2004* | *Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of F.B. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played.* |
| *SEVEN* | *8/16/2004* | *Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of N.A. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played.* |
| *EIGHT* | *8/16/2004* | *Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of L.P. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played.* |

| NINE | 8/16/2004 | Caused a telephone call originating in Dallas, Texas to be placed over the interstate wires to the telephone number of A.B. in the District of Columbia in which the fraudulent hoax voicemail touting the stock of PWRM was played. |
|------|-----------|----------|

*The Indictment also charges all of the defendants with attempting to commit wire fraud.*

You should understand clearly that the Indictment that I just read is not evidence. The Indictment is just a formal way of charging a person with a crime in order to bring him to trial. You must not think of the Indictment as any evidence of the guilt of the defendants, or draw any conclusion about the guilt of the defendants just because they have been indicted.

*The defendants have been charged with conspiracy to commit securities fraud and wire fraud, securities fraud, and wire fraud. The government has also charged the defendants with the lesser and included charges of attempted wire fraud. I will fully instruct you on the elements and definitions of each of these crimes in my final instructions to you before you deliberate. However, so that you may have a basic understanding of the charges at issue, in brief, the government must prove beyond a reasonable doubt each of the elements of the offenses it has charged.*

*The elements of the offense of securities fraud is that the defendant:*

*First: That, in connection with the purchase or sale of a security the defendant did any one or more of the following:*

-13-

(A) used a device, scheme or artifice to defraud, or

(B) made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances, misleading, or

(C) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

*Second*:  That the defendant acted willfully, knowingly and with the intent to defraud; and

*Third*:  That the defendant knowingly and willfully used or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.


The elements of the offense of wire fraud are:

First:  That the Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or promises;

Second: That the false pretenses, representations or promises related to a material fact;

Third: That the Defendant did so willfully and with an intent to defraud; and

Fourth: That the Defendant transmitted or caused to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.

-14-

*The elements of the charge of conspiracy to commit securities fraud and wire fraud are:*

*First, that between July 2004 and August 23, 2004, an agreement existed between two or more people, to commit the crime of Securities Fraud or Wire Fraud.*

*Second, that the person intentionally joined in that agreement.*

*Third, the government must show that one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an overt act.*

*Now let me explain to you* how the trial will proceed. *As I do that* I will refer to the "government" and to the "defendant." When I mention the "government," I am referring to the two attorneys who are presenting the evidence in support of the charges contained in the Indictment. In this case, it is Assistant United States Attorneys Jonathan Barr and Tejpal S. Chawla. When I mention the defendant or the defense, I am referring the defendants, Mr. Mills, Mr. Boling, or Ms. Boling, or to their attorneys, Mr. Robert Switzer, Mr. Thomas Abbenante, or Ms. Leslie McAdoo.

As the first step in this trial, the government and the defendant will have an opportunity to make opening statements. *The government must make an opening statement at the beginning of its case. Each* defendant may make an opening statement immediately after the government's opening statement, or *one or more of the defendants* may *determine to* wait until

the beginning of the defendant's case. A defendant does not have to make any opening statement. The opening statements are only intended to help you understand the evidence which will be introduced. The opening statements are not evidence.

After the opening statement or statements, the government will introduce evidence to support the charges in the Indictment. After the government presents its evidence, the defendant may present evidence, but he is not required to do so. The law does not require a defendant to prove his innocence or to produce any evidence.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case. The lawyers' closing arguments, just like their opening statements, are not evidence in this case. They are only intended to help you understand the evidence.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your verdicts shall be. Your verdicts must be unanimous; that is, all twelve jurors must agree on the verdicts.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair and efficient manner, to rule on legal questions which come up in the course of the trial, and to instruct you about the law which applies to this case. It is your sworn duty as jurors to accept

and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case. You -- and only you -- are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you. You alone must decide whether to believe any witness, and to what extent to believe any witness.

And remember, you must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory and your notes if you choose to take any.

During this trial, I may rule on motions and objections by the lawyers, comment to lawyers, question the witnesses, and instruct you on the law. You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts. If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it. The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case. That evidence includes the sworn testimony of witnesses and exhibits. If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

-17-

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

The lawyers in the case may object when the other side asks a question, makes an argument, or offers evidence which that lawyer believes is not properly admissible. You must not be prejudiced against the lawyer who makes the objection or the party he represents. Indeed, it is the lawyer's responsibility to object to evidence which he or she believes is not properly admissible.

If I sustain an objection to a question asked by a lawyer, you should forget about the question because the question is not evidence. You must not guess or speculate what the answer to the question would have been. If a question is asked and answered, and I then rule that the answer should be stricken from the record, you must forget about both the question and the answer that was stricken. You should follow this same rule if any of the exhibits is stricken.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which

-18-

the defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the charged offenses beyond a reasonable doubt, you must find the defendant not guilty.

You must not be influenced by the nature of the charges in arriving at your verdict. Your responsibility is to decide this case solely on the evidence presented in the courtroom. As a result, you must not conduct any independent investigation of your own of the case -- like going to visit the scene.

In addition, you should disregard any statements made about the case by anyone outside the courtroom. You must not talk about the case with the lawyers, the defendant, witnesses, or anyone else connected with the case. If you see someone involved in this case, other than a fellow juror, outside the courtroom, you should not speak with that person about anything. If, at any time during the trial, anyone tries to discuss the case with you or if you hear anyone talking about the case, you should refuse to participate in or listen to the discussion. If you speak with someone involved in the case outside the courtroom while the trial is still going on, we may have to stop the trial, pick a new jury and start all over again. You must also completely disregard any press coverage, including newspaper, television or radio reports which you may read, see or hear. If you are exposed to any news reports inadvertently, you should immediately disregard them and direct your attention elsewhere.

If you have heard any statements about the case, if anyone has tried to discuss the

case with you or if you have been exposed to press coverage about the case, you must tell me about it immediately by informing the marshal or the courtroom clerk. You should not tell any of your fellow jurors or anyone else. *It is very important that you not discuss matters of this type with your fellow jurors or with anyone else until I have spoken to you.* You should tell only me, one of the Deputy Marshals, or the clerk.

You must not discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions. Until the case is submitted to you, you must not talk about it with your fellow jurors. You must not talk about the case to your friends or relatives, or even your spouse or partner, until it is over and you have completed your deliberations.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors. It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

# DEFINITIONS

## Form Instruction 1.04

A.     <u>STIPULATION OF FACT</u>

The government and the defendant may stipulate -- that is, agree -- to certain facts.  Any stipulation of fact is undisputed evidence, and you may consider it proven.

B.     <u>STIPULATION OF TESTIMONY</u>

The government and the defendant may stipulate -- that is, agree -- to what testimony a particular witness would have given if he or she had testified in this case.  You may consider stipulated testimony as exactly what this witness would have said had he or she testified.

C.     <u>JUDICIAL NOTICE</u>

The court may take judicial notice of public acts, places, facts and events which are matters of common knowledge or which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  When the court takes judicial notice of a particular fact, you may regard that fact as proven evidence.  However, you are not required to accept as conclusive any fact judicially noted because you are the sole judges of the facts.

## CAUTIONARY INSTRUCTION PRIOR TO FIRST RECESS

## Form Instruction 1.05

We are about to take our first break during the trial and it is important that you follow certain instructions whenever the court is in recess.

First, until I submit this case to you at the end of my final instructions, you must not discuss it with anyone -- not with the parties, witnesses, attorneys, or anyone else connected with the case. You must not even discuss it with your fellow jurors, friends or family members. To be fair to both the government and the defendant, you should keep an open mind throughout the trial. You should reach your conclusion only during the final deliberations after all the evidence is in and you have heard the attorneys' closing arguments and my instructions to you on the law.

Second, do not permit any other person to discuss the case in your presence. This applies to anyone, including members of your family, friends or relatives, courtroom spectators, witnesses, reporters, and parties to this case. If anyone attempts to discuss the case with you, tell them not to talk to you. If anyone attempts to discuss the case with you or you overhear any discussion of the case, you must report that fact to me as soon as you can. However, you should not discuss with any of your fellow jurors the fact that someone tried to discuss the case with you or that you overheard a discussion, nor should you discuss with them any other fact that you feel necessary to bring to the court's attention. If you need to advise me of such matters, please do so through the marshal or clerk.

Finally, although it is a natural human tendency to talk with people with whom you may

be thrown into contact, you must not talk to any of the parties or their attorneys or any witness in this case during the time you serve on this jury. If you encounter anyone connected with the case outside the courtroom, you should avoid having a conversation with them, overhearing their conversation, or having any contact with them at all. For example, if you inadvertently find yourself in a courthouse corridor, elevator, the cafeteria, or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions. If you do overhear a discussion about the case, you should report that to me as soon as you can. Finally, if you see an attorney or witness involved in the case and they turn and walk away from you, they are not being rude. They are merely trying to avoid any contact with you as I have instructed them.

# CAUTIONARY INSTRUCTION ON PUBLICITY

## Form Instruction 1.16

In some cases, although not necessarily this one, there may be reports in the newspaper or on the radio or television concerning the case while the trial is going on. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not listen to or read such reports, and you must decide this case solely on the evidence presented in this courtroom. You must consider only evidence that meets certain standards in reaching your verdict. For example, a witness may testify about events he himself has seen or heard, but he generally may not testify about matters which others have told him about. Also, witnesses must be sworn to tell the truth and must be subject to cross-examination. News reports about this case are not subject to any of those standards, and if you read, listen to, or watch these reports, you may be exposed to misleading or inaccurate information that unduly favors one side of the case, and to which the other side is unable to respond. Therefore, you must completely disregard any press, television, or radio report that you my read, see, or hear. Such reports are not evidence and you should not be influenced in any manner whatsoever by such publicity. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can. I will then briefly discuss it with you to make sure it does not present any problems.

In fairness to both sides, it is essential that you comply with this instruction.

## <u>QUESTION NOT EVIDENCE</u>

## Form Instruction 1.07

Sometimes a lawyer's question suggests that something is a fact. Whether or not something is a fact depends on the witness' answer -- not the lawyer's question. A lawyer's question is not evidence.

# A JUROR'S RECOGNITION OF A WITNESS OR OTHER PARTY

# CONNECTED TO THE CASE

## Form Instruction 1.22

At the beginning of the jury selection process, you were introduced to some witnesses in person. Others were identified to you only by name. If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately. You should not tell any other member of the jury about your discovery. If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

# FUNCTION OF THE COURT

## Form Instruction 2.01

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law which applies in this case.

It is your duty to accept the law as I state it to you. You should consider all the instructions as a whole. You may not ignore any instruction, or question the wisdom of any rule of law.

## <u>FUNCTION OF THE JURY</u>

## Form Instruction 2.02

Your function, as the jury, is to determine what the facts are in this case. You are the sole judges of the facts. You alone decide what weight to give to the evidence presented during the trial. You decide the value of the evidence and the believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any opinion as to the facts, you should ignore it. It is your sole and exclusive duty to decide the verdict in this case.

## **JURY'S RECOLLECTION CONTROLS**

### **Form Instruction 2.03**

If any reference by the court or the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection which should control during your deliberations.

## STATEMENTS OF COUNSEL

### Instruction 2.05

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.

## INDICTMENT NOT EVIDENCE

### Form Instruction 2.06

The indictment is merely the formal way of accusing a person of a crime to bring him/her to trial. You must not consider the indictment as evidence of any kind -- you may not consider it as any evidence of the defendant's guilt or draw any inference of guilt from it.

## INADMISSIBLE AND STRICKEN EVIDENCE

## Form Instruction 2.07

The lawyers in this case may sometimes object when the other side asks a question, makes an argument, or offers evidence which the objecting lawyer believes is not proper. You must not be prejudiced against the lawyer who makes the objections. It is the lawyers' responsibility to object to evidence which they believe is not admissible.

If, during the course of the trial, I sustain an objection to a lawyer's question, you should disregard the question and you must not speculate as to what the answer would have been.

If, after a witness answers a lawyer's question, I rule that the answer should be stricken, you should disregard both the question and the answer.

Likewise, exhibits, as to which I have sustain an objection, or which I order stricken, are not evidence and you must not consider them.

# BURDEN OF PROOF -- PRESUMPTION OF INNOCENCE

## Form Instruction 2.08

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until s/he is proven guilty beyond a reasonable doubt.

The burden is on the government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his/her innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him/her guilty. On the other hand, if you find the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

# DIRECT AND CIRCUMSTANTIAL EVIDENCE

## Form Instruction 2.10

There are two types of evidence from which you may find the facts of a case -- direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness' testimony is direct evidence. A chain of facts and circumstances indicating the guilt or innocence of a defendant is circumstantial evidence

The law makes no distinction between the weight you should give to either kind of evidence, nor does circumstantial evidence require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should weigh all of the evidence presented, both direct and circumstantial.

# CREDIBILITY OF WITNESSES

## Form Instruction 2.11

In determining whether the government has established the charge[s] against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the demeanor and the behavior of the witness on the witness stand; the witness' manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important

-35-

or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

## **<u>EXHIBIT NOTEBOOKS DURING TRIAL</u>**

*I have asked the Government to provide each of you with a copy of its Exhibits in notebooks. The Exhibits in the notebooks have been entered into evidence, and have been provided to you to assist you during the trial. Some volumious exhibits are not included in your notebooks, but they will be presented to you during the trial. Please only review those exhibits in the notebook that are being discussed by a witness, and please do not review exhibits that are not being discussed. Because the notebooks are being provided to assist you to understand witness testimony, please do not read unrelated exhibits while a witness is testifying. The notebooks and all of the exhibits will be made available to you in the jury room when you consider your verdicts.*

# NUMBER OF WITNESSES

## Form Instruction 2.13

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side, or you may find to the contrary.

## NATURE OF CHARGES NOT TO BE CONSIDERED

## Form Instruction 2.14

You must not allow the nature of the charge itself to affect your verdict. You must consider only the evidence that has been presented in this case in rendering a fair and impartial verdict.

## POSSIBLE PUNISHMENT NOT RELEVANT

### Form Instruction 2.74

The question of possible punishment of the defendant in the event of conviction is no concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

# THE GOVERNMENT AS A PARTY

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the Defendants, who are charged with serious crimes. Equally, it is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community.

The fact that the prosecution is being brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.

Authority:     Adapted from 1 Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal ¶ 2.01 Instr. 2-5 (Matthew Bender).

# <u>Final Jury Instructions</u>

In addition to the instructions that are contained herein, the Government requests that the Court re-read the following preliminary instructions in its Final Jury Instructions:

**1.07**

**2.01**

**2.02**

**2.03**

**2.04 (same as 1.04 above)**

**2.05**

**2.06**

**2.07**

**2.08**

**2.10**

**2.11**

**2.13**

**2.14**

**2.74**

# EVALUATION OF PRIOR INCONSISTENT STATEMENT OF A WITNESS (if necessary)

## Form Instruction 1.10

ALTERNATIVE A (for use when prior statements not made under oath are introduced):

You have heard evidence that _____ made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. This earlier statement was brought to your attention to help you in evaluating the witness' believability here in court. In other words, if on an earlier occasion the witness made a statement that is inconsistent with his/her testimony in court, you may consider the inconsistency in judging the credibility of the witness. You may not consider this earlier statement as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness' testimony here.

ALTERNATIVE B (for use when prior statements made under oath are introduced):

You have [also] heard evidence that _____ made an earlier statement under oath, subject to the penalty of perjury at a prior _____ [describe when statement was made to make clear which of the prior inconsistent statements fit within this category] and that this statement may be inconsistent with his/her testimony here at trial. This earlier statement was brought to your attention both to help you in evaluating the believability of the witness and as evidence in this case. In other words, if you find that the earlier statement is inconsistent with the witness' present testimony in court, you may consider this inconsistency in judging the

credibility of the witness. In addition, you may consider this earlier statement as proof that what was said in the earlier statement was true.

## **EXPERT TESTIMONY (if necessary)**

## **Instruction 1.08**

Ordinarily, the rules of evidence do not permit witnesses to testify as to opinions or conclusions.  But there is an exception to this rule for expert witnesses.  Experts are allowed to give opinions or conclusions because they have become expert in some art, science, profession or calling.  They may give their opinions or conclusions, and reasons for their opinions.

In this case, the court has permitted [to be supplied at the close of evidence] to testify as an expert concerning [to be supplied at the close of evidence].  You are not bound by an expert's opinion.  If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion.  In other words, give the opinion the weight you think it deserves after you consider it along with all the other evidence.

## Self-Authenticating Documents

You are advised that certain documents and records were admitted into evidence in this case without the need for a witness to testify in court concerning how they were created or maintained. Such records are called "self-authenticating." You are instructed that the authenticity of these documents has been established. The weight that you give to any such materials is a matter for the jury.

Authority:     Fed. R. Evid. 902; 18 U.S.C § 3505.

## __EVALUATION OF PRIOR CONSISTENT STATEMENT OF A WITNESS__
## __(if necessary)__

### Form Instruction 1.11

You have heard evidence that [name of witness] made a statement on an earlier occasion and that this statement may be consistent with his/her testimony here at trial. This earlier statement was brought to your attention both to help you in evaluating the believability of the witness and as evidence in this case. In other words, if you find that the earlier statement is consistent with the witness' present testimony in court, you may consider this consistency both in judging the credibility of the witness here at trial and as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact consistent with the witness' in-court testimony here.

## IMPEACHMENT BY PROOF OF CONVICTION OF A CRIME -- WITNESS (if necessary)

### Form Instruction 1.12

You have heard evidence that a witness has been convicted of a crime. A witness' prior criminal conviction is admitted into evidence solely for your consideration in evaluating his/her credibility as a witness. As a result, you may consider this prior conviction only in evaluating the credibility of that witness' testimony in this case.

## IMPEACHMENT BY PROOF OF PENDING CASE, PROBATION OR PAROLE -- WITNESS (if necessary)

### Form Instruction 1.12A

You have heard evidence that [name of witness] is [charged with a crime][awaiting sentence]. You may consider the fact that the witness [is charged with a crime][or] [is awaiting sentence] when deciding whether or not the witness has a bias in favor of one party or another that may affect his/her desire or willingness to tell the truth.

## <u>IMPEACHMENT BY PROOF OF CONVICTION OF CRIME --</u>
## <u>DEFENDANT (if necessary)</u>

### Form Instruction 1.13

You have heard evidence that the defendant *Roderic Boling* has previously been convicted of a crime. A defendant's prior criminal conviction is admitted into evidence solely for your consideration in evaluating that defendant's credibility as a witness. The fact that the defendant was convicted of a crime in the past is not evidence that *any of* the defendant*s* is guilty of the offense with which he is charged in this case. You must not draw any inference of guilt against the defendant from his prior conviction. You may only consider this prior conviction in evaluating the credibility of his testimony in this case.

# IMPEACHMENT OF DEFENDANT -- STATEMENTS (if necessary)

## Form Instruction 1.14

You have heard evidence that the defendant made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. The defendant's alleged statement is admitted into evidence solely for your consideration in evaluating his/her truthfulness as a witness. The testimony of a defendant may be discredited or impeached by showing that s/he has previously made statements which are not consistent with his/her present testimony. The defendant's prior statement is admitted into evidence solely for you to consider when evaluating the defendant's truthfulness on the witness stand. You may not consider the alleged statement as establishing the truth of any fact contained in it. You may consider it only in evaluating the credibility of his/her present testimony.

## ALLEGED PARTICIPANT'S TESTIMONY (if necessary)

*The Government believes this instruction will be unnecessary because all alleged participants who will be testifying in this case will be materially corroborated by the evidence presented at trial. See United States v. Lang, 889 F.2d 281, 287 (D.C. Cir. 1989).*

The government has a right to use a witness who testifies that s/he participated in the offense(s) charged against the defendant(s), although the testimony of such a witness should be received with caution and scrutinized with care. You may give [his] [her] testimony such weight as you think it deserves. If the testimony of a witness who testifies about [his] [her] own participation in the offense(s) charged is not supported by other evidence, you may convict a defendant upon that testimony only if you believe that it proves the defendant's guilt beyond a reasonable doubt.

Authority:  Adapted from Red Book Standard Instruction § 2.22.

# WITNESS WITH A PLEA AGREEMENT

## Form Instruction 2.22A

You have heard evidence that [name of witness] entered into a plea agreement with the government pursuant to which [name of witness] agreed to testify truthfully in this case and the government agreed to [dismiss one [or more] charges against him/her] [decline prosecution of one [or more] charges against him/her] and/or [bring [name of witness's] cooperation to the attention of the sentencing court on the remaining charge(s) of [name of charge(s) ].

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that he may be able to obtain his/her own freedom, or receive a lighter sentence by giving testimony may have a motive to lie. The testimony of a witness who has entered into a plea agreement should be received with caution and scrutinized with care. You should give the testimony such weight as in your judgment it is fairly entitled to receive.

## <u>LAW ENFORCEMENT OFFICER'S TESTIMONY</u>

## Form Instruction 2.26

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because s/he is a law enforcement officer.

## **RIGHT OF DEFENDANT NOT TO TESTIFY**

## **Form Instruction 2.27**

Every defendant in a criminal case has an absolute right not to testify. [Insert defendant's name] has chosen to exercise his/her right to remain silent. You must not hold this decision against him/her, and it would be improper for you to speculate as to the reason or reasons for his/her decision, and I, therefore, instruct you not to do so. Most importantly, you must not draw any inference of guilt from the defendant's decision not to testify.

## DEFENDANT AS WITNESS (if necessary)

### Form Instruction 2.28

The defendant has a right to become a witness in his/her own behalf. His/Her testimony should not be disbelieved merely because s/he is the defendant. In weighing his/her testimony, however, you may consider the fact that the defendant has [a vital] [an] interest in the outcome of this trial. As with the testimony of any other witness, you should give the defendant's testimony such weight as in your judgment it is fairly entitled to receive.

## FALSE OR INCONSISTENT STATEMENT
## BY DEFENDANT (if necessary)

### Form Instruction 2.29

If you find that the defendant made false or inconsistent statements in explanation of his actions, the following instruction would apply:

False or inconsistent statements that a defendant makes in explanation or defense, after a crime has been committed, do not create a presumption of guilt. You may consider evidence of such false or inconsistent statements, however, as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and weigh evidence of the defendant's false or inconsistent statements with all the other evidence in the case and give it the weight that you believe it is fairly entitled to receive. It is up to you to decide whether the defendant made the statements, and whether they were, in fact, false or inconsistent.

# <u>STATEMENTS OF THE DEFENDANT -- SUBSTANTIVE EVIDENCE</u>

## Form Instruction 2.48

Evidence has been introduced that the defendant made statements to the law enforcement about the crime charged. You should weigh that evidence with caution and carefully consider all the circumstances surrounding the making of the statement. Do this in deciding what weight to give it, along with all the other evidence, when deciding the guilt or innocence of the defendant.

In examining the circumstances surrounding the statement, you may consider whether the defendant made it freely and voluntarily with an understanding of what s/he was saying. You may consider whether s/he made it without fear, threats, coercion, or force, either physical or psychological, and without promise of reward. You may consider the conversations, if any, between the law enforcement and the defendant. For example, you may consider [whether law enforcement warned him/her of his/her rights]; where and when the statement was given; the length of time, if any, that the police questioned him/her; who was present; the physical and mental condition of the defendant. You may consider the age, disposition, education, experience, character, and intelligence of the defendant. Considering all the circumstances, you should give his/her statement such weight as you think it deserves.

# DEFENDANT'S STATEMENTS -- CORROBORATION

## Form Instruction 2.49

A defendant cannot be convicted solely on his/her own statements concerning essential elements of the offense, which s/he made out of court. Therefore, unless you find that the statements attributed to the defendant are adequately supported by other evidence, you must not consider them as evidence in this case.

You must not consider the statements allegedly made by the defendant unless you find that there is substantial independent evidence of facts or circumstances that tend to establish the trustworthiness of these statements. This supportive evidence may be direct or circumstantial or both.

You must find the defendant not guilty, unless the independent evidence and the defendant's statements, taken as a whole, establish the essential elements of the offense beyond a reasonable doubt.

## <u>STATEMENTS -- CO-DEFENDANTS</u>

### Form Instruction 2.50

A statement constitutes evidence only against the defendant making it. It is not evidence against any other defendant. You must not consider it in any way in determining the [guilt or innocence] [credibility] of any other defendant.

## **Preparation of Witnesses (if applicable)**

You have heard testimony about witnesses meeting with attorneys or investigators before they testified.  It is perfectly proper for a lawyer or investigator to interview a witness in preparation for trial.  In fact, a prosecutor or defense attorney may have a duty to interview witnesses before trial.

Authority:Seventh Circuit Pattern Criminal Jury Instruction 1.07 (1999).

# Inferences

During the trial you have heard the attorneys use the term "inference" and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact which you know exists.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The government ask you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or a conclusion that you the jury are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience. Here again, let me remind you that whether based upon direct or circumstantial evidence, or upon the logical reasonable inferences drawn from such evidence, you must be satisfied of the guilt of any defendant beyond a reasonable doubt before you may convict.

Authority:     Leonard B. Sand et al., <u>Modern Federal Jury Instructions - Criminal</u> ¶ 2.01 Instr. 6-1 (Matthew Bender).

## <u>MULTIPLE DEFENDANTS -- MULTIPLE COUNTS</u>

### Form Instruction 2.54

You should consider each instruction that I have given to apply separately and individually to each defendant on trial. Each defendant is entitled to have his/her guilt or innocence as to each of the crimes charged to him/her determined from his/her own conduct and from the evidence that applies to him/her, as if s/he were being tried alone. The guilt or innocence of any one defendant of any of the crimes charged should not control or influence your verdicts as to the other defendants.

Unless I tell you otherwise, you should give separate consideration and return separate verdicts with respect to each defendant, as to each count. The fact that you may find a defendant guilty or not guilty on any one count of the indictment should not control or influence your verdict with respect to any other count or counts of the indictment for that defendant.

You may find any one or more of the defendants guilty or not guilty on any one or more counts of the indictment. At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any defendant on any count.

# Charges in the Indictment

## Introduction

At this time I will explain the indictment which charges each defendant with 9 separate offenses called "counts." I will not read it to you at length because you will be given a copy of the indictment for reference during your deliberations.

In summary, Count 1 charges each defendant with knowingly and willfully conspiring with others to commit securities and wire fraud. Counts 2 charges each defendant with Securities Fraud, and Counts 3-9 charge seven separate counts of wire fraud, all of which are commonly referred to as substantive offenses. I will explain the law governing those substantive offenses in a moment.

In order to make my instructions on the law both clearer and shorter, I am going to explain the law governing several of the crimes charged out of the order which they appear in the Indictment. I am going to instruct you on the substantive crimes of securities fraud and wire fraud before I instruct you on the crime of conspiracy because they are charged as objects of the conspiracy. In other words, the conspiracy charge will include some of the instructions that I will give you on the securities fraud and wire fraud counts. In addition to instructing you on the substantive Securities Fraud and Wire fraud counts, I am also going to instruct you on the lesser

*included charges of Attempted Wire Fraud.  After I give you the elements of each of these*

*crimes, I will tell you the order in which you should consider them.*

# Securities Fraud
## Statutory and Regulatory Scheme

Count Two charges each defendant with securities fraud in connection with the purchase and sale of securities issued by Power3 Medical Products, Inc.

The relevant statute on this subject is Section 10(b) of the Securities Exchange Act of 1934, also known as Title 15, United States Code, Section 78j(b). It provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange . . .

> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

I will now read the relevant portion of the regulations that the United States Securities and Exchange Commission, which is commonly known as the "SEC," enacted "as necessary or appropriate in the public interest" and "for the protection of investors." Rule 10b-5, promulgated by the SEC, reads as follows:

> **Employment of manipulative and deceptive devices.** It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of any facility of any national securities exchange,

(a)  To employ any device, scheme, or artifice to defraud,

(b)  To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading,  or

(c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Specifically, Count Two of the Indictment charges:

[The Court is respectfully requested to read Count Two of the Indictment.]

Authority:     3 L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u>, Instr. 57-18 (Matthew Bender 2007).

## Securities Fraud

## Statutory Purpose

Each defendant is charged with securities fraud in violation of the Securities Exchange Act of 1934.

The 1934 Securities Exchange Act was the second of two laws passed by Congress to provide a comprehensive plan to protect the investing public in the purchase and sale of securities that are publicly distributed.

The stock market crash of 1929 led to much legislation in the area of federal regulation. Included in this regulation was the Securities Act of 1933 and the creation of the SEC. The Securities Act of 1933 was enacted to protect the investing public in the purchase of stock that is publicly distributed. The Securities Act of 1933 provides a comprehensive plan requiring full and fair disclosure of all important facts in connection with a distribution of stock. Such disclosures are designed to enable the investing public to make realistic appraisals of the merits of stocks so that investors may make informed investment decisions.

When it enacted the Securities Act of 1933, Congress recognized that the purchase of a stock is different from the purchase of a vegetable bought in the grocery store in that the average investor is not in a position to make a personal investigation to determine the worth, quality and value of stocks.

Following the enactment of the Securities Act of 1933 requiring full and fair

disclosure relating to the offering of stock to the investing public, Congress enacted the

Securities Exchange Act of 1934 to ensure fair dealing and outlaw deceptive and inequitable

practices by those selling or buying securities on the securities exchanges, over the counter

markets or in face-to-face transactions.  Among the primary objectives of the Securities

Exchange Act of 1934 are the maintenance of fair and honest security markets and the

elimination of manipulative practices that tend to distort the fair and just price of stock.

Congress recognized that any deceptive or manipulative practice that influenced or related to

trading activity undermined the function and purpose of a free market.

> Authority:    3 L. Sand, *et al.*, <u>Modern Federal Jury Instructions</u>, Instr. 57-19 (Matthew Bender 2007).

## <u>Securities Fraud–</u>

## <u>Elements of the Offense</u>

Count Two of the indictment charges each defendant with violating Title 15, United States Code, Section 78j(b) and Title 17, Code of Federal Regulations, Section 240.10b-5, which makes it a Federal crime or offense for anyone to commit fraud in connection with the purchase and sale of securities.

In order to meet its burden of proof, the Government must establish beyond a reasonable doubt each of the following elements of the crime of securities fraud:

<u>First</u>: That, in connection with the purchase or sale of a security (in this case, the purchase or sale of Power3 Medical Products, Inc., stock), the defendant did any one or more of the following:

(A) used a device, scheme or artifice to defraud, or

(B) made an untrue statement of a material fact or omitted to state a material fact which made what was said under the circumstances, misleading, or

(C) engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;

<u>Second</u>:  That the defendant acted willfully, knowingly and with the intent to defraud; and

<u>Third</u>:  That the defendant knowingly and willfully used or caused to be used, any means or instruments of transportation or communication in interstate commerce or the use of the mails in furtherance of the fraudulent conduct.  I will now define some of these elements for you.

Authority:      Adapted from 3 Leonard B. Sand, et al., <u>Modern Federal Jury Instructions</u>, Instruction 57-20 (2007); <u>see</u> <u>United States v. Gleason</u>, 616 F.2 2 (2d Cir. 1979), <u>cert. denied</u>, 444 U.S. 1082 (1980).

## Securities Fraud

## First Element:  Fraudulent Act

The first element that the government must prove beyond a reasonable doubt is that in connection with the purchase or sale of Power3 Medical Products, Inc., stock, the defendants did any one or more of the following:

(1)     employed a device, scheme or artifice to defraud; OR

(2)     made an untrue statement of a material fact or omitted to state a material fact which made what was said, under the circumstances, misleading; OR

(3)     engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

It is not necessary for the Government to establish all three types of unlawful conduct in connection with the purchase or sale of the Power3 Medical Products, Inc., stock in question. Any one will be sufficient for a conviction, if you so find, but you must be unanimous as to which type of unlawful conduct you find to have been proven.

### A Device, Scheme, or Artifice to Defraud

A device, scheme or artifice to defraud is merely a plan for the accomplishment of any fraudulent objective.  Fraud is a general term which embraces all ingenious efforts and means that individuals devise to take advantage of others.   It includes all kinds of manipulative and

deceptive acts.  The fraudulent or deceitful conduct alleged need not relate to the value of the securities involved in this case.

**In Connection With**

You need not find that the defendant actually participated in any specific purchase or sale of a security if you find that the defendant participated, or agreed to participate, in fraudulent conduct that was "in connection with" a purchase or sale of securities.

The requirement that the fraudulent conduct be "in connection with" a purchase or sale of securities is satisfied so long as there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

It is no defense to an overall scheme to defraud that the defendant was not involved in the scheme from its inception or played only a minor role with no contact with the investors and purchasers of the security in question.  Nor is it necessary for you to find that the defendant was the actual seller of the securities.  It is sufficient if the defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of stock.  By the same token, the Government need not prove that the defendant personally made the misrepresentation or omitted the material fact.  It is sufficient if the Government establishes that the defendant caused the statement to be made or the fact to be omitted.  With regard to the alleged misrepresentations and

omissions, you must determine whether the statements were true or false when it was made, and, in the case of alleged omissions whether the omissions were misleading.

### "Material Fact"

If you find that the Government has established beyond a reasonable doubt that a statement was false or omitted rendering the statements that were made misleading, you must next determine whether the misrepresentation or omission was material under the circumstances. A material fact is one that would have been significant to a reasonable investor in making an investment decision. This is not to say that it is a defense to the crime if the misrepresentation or omission would not have deceived a person of ordinary intelligence. Once you find that there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was or would have been successful or not, or that the defendant profited or would have profited as a result of the alleged scheme. Success is not an element of a violation of Section 78j(b) or Rule 10b-5. However, you may consider whether the defendant did or did not profit from the alleged scheme, in relation to the element of intent, which I will discuss in a moment.

Next, I will explain three types of false statements.

An affirmative misrepresentation is one type of false statement.  It is a statement of fact that is objectively false.  To put it in everyday language, an affirmative misrepresentation is a lie. A statement, misrepresentation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.  The deception need not be premised upon spoken or written words alone.  The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished does not matter.  In addition, the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.

Second, a statement may also be false if it contains half-truths or if it conceals material facts in a manner that makes what is said or represented deliberately misleading.

Finally, the failure to disclose information may also constitute a fraudulent representation, if the person was under a legal duty to make such a disclosure.  That is, the person had to know he had a legal obligation to make such a disclosure and failed to make such disclosures with the intent to defraud.  It is the government's burden to prove the existence of a legal duty beyond a reasonable doubt.

Authority:     Adapted from 3 Leonard B. Sand, et al., Modern Federal Jury Instructions, Instruction 57-21 (Matthew Bender 2007).

## **Securities Fraud**

## **Second Element: Knowledge, Intent and Willfulness**

The second element that the Government must establish beyond a reasonable doubt is that the defendant you are considering acted knowingly, willfully, and with the specific intent to defraud.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

"Intent to defraud" in the context of the securities laws means to act knowingly and with intent to deceive.

The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question. The question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available. It would be the rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his

words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn therefrom.

Circumstantial evidence, if believed, is of no less value than direct evidence. In either case, the essential evidence of the crime charged must be established beyond a reasonable doubt.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of securities fraud. A defendant, however, has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

Under the anti-fraud statutes, *even* false representations or statements or omissions of material facts do not amount to fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. An honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statements may have turned out to be.

In considering whether or not a defendant acted in good faith, you are instructed that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. No amount of honest belief on the part of a defendant that the scheme will (e.g., ultimately make a profit for the investors) will excuse fraudulent actions of false representations by him to obtain money.

-78-

As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the scheme was calculated to deceive and nonetheless, he associated himself with the alleged fraudulent scheme.

The government may prove that the defendant acted knowingly in either of two ways. First, it is sufficient, of course, if the evidence satisfies you beyond a reasonable doubt that the defendant was actually aware he was (e.g., making or causing a false statement to be made). Alternatively, the defendant's knowledge may be established by proof that the defendant was aware of a high probability that the statement was false, unless, despite this high probability, the facts show that the defendant actually believed the statement to be true.

Knowledge may be found from circumstances that would convince an average, ordinary person. Thus, you may find that the defendant knew that he made it with deliberate disregard of whether it was true or false and with a conscious purpose to avoid learning the truth. If you find beyond a reasonable doubt that the defendant acted with deliberate disregard for the truth, the knowledge requirement would be satisfied unless the defendant actually believed the statement to be true. This guilty knowledge, however, cannot be established by demonstrating merely negligence, recklessness or foolishness on the part of the defendant.

To conclude on this element, if you find that the defendant was not a knowing participant in the scheme and lacked the intent to deceive, you should acquit the defendant. On the other hand, if you find that the government has established beyond a reasonable doubt not only the

first element, namely, the existence of a scheme to defraud, but also this second element, that the

defendant was a knowing participant and acted with intent to defraud, and if the government also

establishes the third element, as to which I am about to instruct you, then you have a sufficient

basis upon which to convict the defendant.

Authority:    Adapted from 3 Leonard B. Sand, et al., <u>Modern Federal Jury Instructions</u>,

Instruction 57-24 (Matthew Bender 2007).

## Securities Fraud

## Third Element: Instrumentality of Interstate Commerce

The third element that the government must prove beyond a reasonable doubt is that the defendants knowingly used or caused to be used an instrumentality of interstate commerce or the mails in furtherance of the scheme to defraud or fraudulent conduct. The interstate telephone wires are an instrumentality of interstate commerce.

It is not necessary that the defendant be directly or personally involved in any mailing or use of an instrumentality of interstate commerce. If the defendant was an active participant in the scheme or fraudulent conduct and took steps or engaged in conduct which he knew or could reasonably foresee would naturally and probably result in the use of the mails or an instrumentality of interstate commerce, then you may find that he caused the mails or an instrumentality of interstate commerce to be used.

When one does an act with the knowledge that the use of interstate means of communications will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he caused such means to be used.

Nor is it necessary that the items sent through the mails or communicated through an instrumentality of interstate commerce contained the fraudulent material, or anything criminal or objectionable. The matter mailed or communicated may be entirely innocent so long as it is in furtherance of the scheme to defraud or fraudulent conduct.

The use of the mails or instrumentality of interstate commerce need not be central to the

execution of the scheme or even be incidental to it. All that is required is that the use of the mails or instrumentality of interstate commerce bear some relation to the object of the scheme or fraudulent conduct.

In fact, the actual purchase or sale of a security need not be accompanied by the use of the mails or instrumentality of interstate commerce, so long as the mails or instrumentality of interstate commerce are used in furtherance of the scheme and the defendant is still engaged in actions that are part of a fraudulent scheme when the mails or the instrumentalities of interstate commerce are used.

Authority:     Adapted from 3 Leonard B. Sand, et al., <u>Modern Federal Jury Instructions</u>, Instruction 57-25 (Matthew Bender 2007).

## **Securities Fraud**

## **Manipulative Conduct**

"Manipulation" is a term of art in the securities industry.  For a practice to be

manipulative, there must be (1) an intent to defraud investors (2) by artificially affecting market

activity, that is, by affecting market activity in a way that is deceptive and misleading.  The term

refers generally to practices that are intended to mislead investors by creating a false appearance

that certain market activity is genuine when in fact it is not.


Authority:      Santa Fe Industries v. Green, 430 U.S. 462, 476 (1977); Adapted from

Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, 2B Fed. Jury

Prac. & Instr. § 62.09 (5th ed.) "Any Manipulative Or Deceptive Device

Or Contrivance"--Defined

-83-

## **Securities Fraud- Omission Where Legal Duty to Disclose**

## **Requirement that Compensation for Promotion Securities Be Disclosed**

Section 17(b) of the Securities Act of 1933, also known as Title 15, United States Code, Section 77q(b) provides:

> It shall be unlawful for any person, by the use of any means or instruments of
>
> transportation or communication in interstate commerce or by the use of the mails
>
> to publish, give publicity to, or circulate any notice circular, advertisement,
>
> newspaper, article, letter, investment service, or communication which, though
>
> not purporting to offer a security for sale, describes such security for
>
> consideration received or to be received, directly or indirectly, from an issuer,
>
> underwriter, or dealer, without fully disclosing the receipt, whether past or
>
> prospective, of such consideration and the amount thereof.

## <u>Wire Fraud (Counts 3-9</u>)

Title 18, United States Code, Section 1343, makes it a Federal crime or offense for anyone to use interstate wire communications facilities in carrying out a scheme to defraud.

The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First: That the Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or promises;

Second: That the false pretenses, representations or promises related to a material fact;

Third: That the Defendant did so willfully and with an intent to defraud; and

Fourth: That the Defendant transmitted or caused to be transmitted by wire in

interstate commerce some communication for the purpose of executing the scheme to

defraud.

The term "scheme to defraud" includes any plan or course of action intended to deceive or cheat someone out of money or property by means of false or fraudulent pretenses, representations, or promises.  *No misrepresentation of fact is required if the scheme is reasonably calculated to deceive persons of ordinary prudence.[1]  It is not necessary for the*

---

[1]  <u>United States v. McNeive</u>, 536 F.2d 1245, 1249 n.10 (8th Cir. 1976).

-85-

government to prove that the defendant was actually successful in defrauding anyone.  It is also not necessary for the Government to prove that anyone lost any money or property as a result of the scheme or plan to defraud.  An unsuccessful scheme or plan to defraud is as illegal as a scheme or plan that is ultimately successful.[2]

 "Fraud" is a general term embracing all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions, suppression of the truth, or deliberate disregard for the truth. Thus, a "scheme to defraud" is a plan to deprive another of money or property by trick or deception.  The deception need not be premised upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance.  If there is deception, the manner in which it is accomplished is immaterial.[3]

 The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal, professional or contractual duty to make such a disclosure, the

_____

 [2]  Quoted directly from O'Malley et al., 2A Federal Jury Practice & Instructions § 47.13, at 402.  See also Durland v. United States, 161 U.S. 306, 315 (1896); United States v. Allard, 926 F.2d 1237, 1242 (1st Cir. 1991); United States v. Helmsley, 941 F.2d 71, 94 (2d Cir. 1991); Federal Judiciary Center, Pattern Jury Instructions [86] ("It does not matter whether this plan succeeded or whether the defendant made money from this plan").

 [3]2 Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal Instr. 44-4 (Matthew Bender).

-86-

*defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.*[4]

A statement or representation is "false" or "fraudulent" if it relates to a material fact and is known to be untrue or is made with reckless indifference as to its truth or falsity, and is made or caused to be made with intent to defraud. A statement or representation may also be "false" or "fraudulent" when it constitutes a half truth, or effectively conceals a material fact, with intent to defraud.

A "material fact" is a fact that would be important to a reasonable person in deciding whether to engage or not to engage in a particular transaction. A fact is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to whom or to which it is addressed. A false or fraudulent statement, representation or promise can be material even if the decision maker did not actually rely on the statement, or even if the decision maker actually knew or should have known that the statement was false.

To act with "intent to defraud" means to act knowingly and with the specific intent to deceive or cheat someone, ordinarily for the purpose of causing some financial loss to another or bringing about some financial gain to one's self. *The Government need not prove that the defendant intended to defraud any particular person, so long as it proves that s/he intended to*

---

[4]  2 Leonard B. Sand et al., <u>Modern Federal Jury Instructions - Criminal</u> Instr. 44-4 (Matthew Bender).

*defraud any person.[5]  The Government need not prove that the intended victims were actually*

*harmed, only that such harm was contemplated.[6]   Nor must it show that the victim of the scheme*

*was pure of heart or without fault.[7]*

It is not necessary that the Government prove all of the details alleged in the indictment

concerning the precise nature and purpose of the scheme; or that the material transmitted by wire

was itself false or fraudulent; or that the alleged scheme actually succeeded in defrauding

anyone; or that the use of interstate wire communications facilities was intended as the specific

or exclusive means of accomplishing the alleged fraud; or that the Defendant personally used the

wire communication facility.

What must be proved beyond a reasonable doubt is that the Defendant, with intent to

defraud, knowingly and willfully devised, intended to devise, or participated in, a scheme to

defraud substantially the same as the one alleged in the indictment; and that the use of the

interstate wire communications facilities was closely related to the scheme because the

Defendant either used, or caused to be used, wire communications facilities in interstate

commerce in an attempt to execute or carry out the scheme.

To "cause" interstate wire communications facilities to be used is to do an act with

knowledge that the use of such facilities will follow in the ordinary course of business or where

---

[5] From Red Book Instruction 4.41.

[6] Language from <u>United States v. Gabriel</u>, 125 F.3d 89, 96-97 (2nd Cir. 1997).

[7] <u>United States v. Camuti</u>, 78 F.3d 738, 742 (1st Cir. 1996).

such use can reasonably be foreseen.  *The wire communication must pass between two or more states (or the District of Columbia), for example, a telephone call between New York and New Jersey.  The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for the defendant to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.  In this regard it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others.  This does not mean the defendant must specifically have authorized others to make the call.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can be reasonably foreseen, even though not actually intended, then he causes the wires to be used.  With respect to the use of the wires, the government must establish beyond a reasonable doubt the particular use charged in the indictment.  However, the government does not have to prove that the wires were used on the exact date charged in the indictment.  It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the dates charged in the indictment.*[8]

---

[8]  From 2 Leonard B. Sand et al., <u>Modern Federal Jury Instructions - Criminal</u> Instr. 44-7 (Matthew Bender).

Each separate use of the interstate wire communications facilities in furtherance of a scheme to defraud constitutes a separate offense.

**Authority: Adopted wholly from the Eleventh Circuit Pattern Jury Instruction 51.1 except where noted in sections with italics.**

## Attempted Wire Fraud- Counts 3-9

## Form Instruction 4.04

The essential elements of the crime of Attempted *Wire Fraud*, each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant intended to commit the crime of *Wire Fraud*;

2. That the defendant did an act reasonably adapted to accomplishing the crime of Wire Fraud.

The defendant must have done more than prepare to commit *Wire Fraud*. His/her act must have come dangerously close to completing the crime.  You may convict the defendant of an attempt to commit a crime even if the evidence shows the crime was completed.

## Conspiracy to Commit Securities Fraud and Wire Fraud

I am now going to tell you about the charge of Conspiracy to Commit Securities Fraud and Wire Fraud–charged in Count One–which is a separate charge from Securities Fraud and Wire Fraud which is charged in Counts Two through Nine–with which defendants also are charged.

Count One of the Indictment charges defendants Jeffrey Mills, Roderic Boling and Anna Boling with Conspiracy to Commit Securities Fraud and Wire Fraud. It is against the law to agree with someone to commit the crime of Securities Fraud or Wire Fraud. I have just defined for you the crimes of Securities Fraud and Wire Fraud. You may find a defendant guilty of the charge of Conspiracy to commit Securities Fraud or Wire Fraud if you conclude either committed the crime of Conspiracy to Commit Securities Fraud or Conspiracy to Commit Wire Fraud.

The government is not required to prove that the objective of the conspiracy was achieved. To find the defendants Jeffrey Mills, Roderic Boling and Anna Boling guilty of the crime of Conspiracy, you must be convinced that the government has proved each of the following three elements beyond a reasonable doubt:

First, that between July 2004 and August 23, 2004, an agreement existed between two or more people, to commit the crime of Securities Fraud or Wire Fraud. This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people

get together and talk about common interests, or do similar things does not

necessarily show that an agreement exists to commit the crime of Securities Fraud

or Wire Fraud.  It is enough that the government proves beyond a reasonable

doubt that there was a common understanding among those who were involved to

commit the crime of Securities Fraud or Wire Fraud. So, the first thing that must

be shown is the existence of an agreement.

Second, the government must prove that the specific defendant intentionally joined in

that agreement.  It is not necessary to find he agreed to all the details of the crime,

or that he knew the identity of all the other people the government has claimed

were participating in the agreement. A person may become a member of a

conspiracy even if that person agrees to play only a minor part, as long as that

person understands the unlawful nature of the plan and voluntarily and

intentionally joins in it with the intent to advance or further the unlawful object of

the conspiracy. Even if a defendant was not part of the agreement at the very start,

he can become a member of a conspiracy later if the government proves that he

intentionally joined the agreement. Different people may become part of the

conspiracy at different times.

But mere presence at the scene of the agreement or of the crime, or merely

being with the other participants, does not show that the defendant knowingly

joined in the agreement. Also, unknowingly acting in a way that helps the

-93-

participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. So the second thing that must be shown is that the defendant was part of the conspiracy.

Third, the government must show that one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an overt act. The government must show that one of the people involved in the conspiracy did one of the overt acts to carry out the conspiracy. The overt acts charged in the indictment are as follows:

24.    *In or about July 2004, defendant JEFFREY S. MILLS spoke to R.B. and agreed to do an investor relations campaign to promote MAUG and MAUG stock in return for a portion of the proceeds from the sale of MAUG stock owned by R.B.*

25.    *In or about July 2004, defendant JEFFREY S. MILLS spoke to D.B. and agreed to do an investor relations campaign to promote IVFH stock in return for compensation of 250,000 shares of IVFH stock.*

26.    *In or about July 2004, defendant JEFFREY S. MILLS spoke to D.B. and agreed to do an investor relations campaign to promote DNNI and FGWC stock in return for a promise of compensation in the form of a large number of shares of DNNI and FGWC stock.*

27.    In or about July and August 2004, defendant JEFFREY S. MILLS spoke to an unindicted co-conspirator and agreed to conduct an investors relations campaign to promote PWRM stock in return for a promised large cash payment.

28.    In or about late July 2004, defendant RODERIC L. BOLING engaged TBC to broadcast voicemail messages touting several publicly traded stocks, and instructed TBC to perform the voicemail campaign in a manner designed to conceal from persons receiving the stock tout voicemails that they were receiving fraudulent hoax voicemails.

29.    In or about late July 2004, defendant RODERIC L. BOLING instructed Michael O'Grady that TBC should never broadcast a stock tout message to the same number twice, and that the recorded stock tout message should only be played to an answering machine or voicemail system.

30.    On or about July 24, 2004, defendants ANNA BOLING and RODERIC L. BOLING called a toll free number from their home telephone in Altamonte Springs, Florida and ANNA BOLING recorded onto the onebox system a fraudulent hoax voicemail message, which touted the stock of MAUG, for distribution by TBC.

31.    On or about July 28, 2004, defendant RODERIC L. BOLING called Michael O'Grady and informed O'Grady that a message had been

-95-

*dropped onto the TBC system which promoted MAUG stock.  BOLING*

*encouraged O'Grady to purchase MAUG stock and to wait for the*

*promotion to kick in.*

32.    *On or about August 3, 2004, defendant JEFFREY S. MILLS deposited a*

*check in the amount of $9,833 into a bank account for his company, Direct*

*Results.  MILLS had received the $9,833 check as partial payment for*

*executing an investment relations campaign for MAUG stock.*

33.    *On or about August 5, 2004, defendant RODERIC L. BOLING called*

*Michael O'Grady and informed him that the next voicemail campaign*

*would involve IVFH stock.  BOLING advised O'Grady to purchase shares*

*of IVFH stock.*

34.    *On or about August 6, 2004, defendants RODERIC L. BOLING and ANNA*

*BOLING called a toll free number from their home telephone in Altamonte*

*Springs, Florida and ANNA BOLING recorded onto the onebox system a*

*fraudulent hoax voicemail message, which touted the stock of IVFH, for*

*distribution by TBC.*

35.    *On or about August 6, 2004, defendant JEFFREY S. MILLS deposited a*

*check in the amount of $15,400 into a bank account for his company,*

*Direct Results.  MILLS had received the $15,400 check as payment for*

*executing an investment relations campaign for MAUG stock.*

-96-

36.     *On or about August 11, 2004, defendants RODERIC L. BOLING and*

*ANNA BOLING called a toll free number from their home telephone in*

*Altamonte Springs, Florida and ANNA BOLING recorded onto the onebox*

*system a fraudulent hoax voicemail message, which touted the stock of*

*PWRM, for distribution by TBC.*

37.     *On or about August 11, 2004, defendants RODERIC L. BOLING and*

*ANNA BOLING called a toll free number from their home telephone in*

*Altamonte Springs, Florida and ANNA BOLING recorded onto the onebox*

*system a fraudulent hoax voicemail message which touted the stock of*

*FGWC, for distribution by TBC.*

38.     *On or about August 11, 2004, defendants RODERIC L. BOLING and*

*ANNA BOLING called a toll free number from their home telephone in*

*Altamonte Springs, Florida and ANNA BOLING recorded onto the onebox*

*system a fraudulent hoax voicemail message, which touted the stock of*

*DNNI, for distribution by TBC.*

39.     *On or about August 12, 2004, defendant JEFFREY S. MILLS caused the*

*securities brokerage account for Direct Results to sell 130,000 shares of*

*IVFH stock for approximately $49,710.*

40.     *On or about August 12, 2004, defendant RODERIC L. BOLING called*

*Michael O'Grady and informed him that voicemail messages would be*

*distributed that promoted FGWC stock and DNNI stock. BOLING advised O'Grady to purchase FGWC and DNNI stock.*

41. *On or about August 13, 2004, defendant JEFFREY S. MILLS caused the securities brokerage account for Direct Results to sell 30,000 shares of IVFH stock for approximately $13,705.66.*

42. *On or about August 16, 2004, defendant JEFFREY S. MILLS caused the securities brokerage account for Direct Results to sell 60,000 shares of IVFH stock for approximately $20,657.*

43. *On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused TBC to place an interstate telephone call from Dallas, Texas to the telephone of "N.A." in the District of Columbia, and caused TBC to leave a fraudulent hoax voicemail touting the stock of PWRM on the answering machine/voicemail system for N.A.*

44. *On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused TBC to place an interstate telephone call from Dallas, Texas to the telephone of "F.B." in the District of Columbia, and caused TBC to leave a fraudulent hoax voicemail touting the stock of PWRM on the answering machine/voicemail system for F.B.*

-98-

45.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of  "L.M." in the

District of Columbia, and caused TBC to leave a fraudulent hoax

voicemail touting the stock of PWRM on the answering machine/voicemail

system for L.M.

46.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of  "L.P." in the

District of Columbia, and caused TBC to leave a fraudulent hoax

voicemail touting the stock of PWRM on the answering machine/voicemail

system for L.P.

47.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of "J.J." in the District

of Columbia, and caused TBC to leave a fraudulent hoax voicemail

touting the stock of PWRM on the answering machine/voicemail system

for J.J.

48.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of "B.C." in the

District of Columbia, and caused TBC to leave a fraudulent hoax

voicemail touting the stock of PWRM on the answering machine/voicemail

system for B.C.

49.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of "T.S." in the District

of Columbia and caused TBC to leave a fraudulent hoax voicemail touting

the stock of PWRM on the answering machine/voicemail system for T.S.

50.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of "D.G." in the

District of Columbia, and caused TBC to leave a fraudulent hoax

voicemail touting the stock of PWRM on the answering machine/voicemail

system for D.G.

51.     On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC

L. BOLING and ANNA BOLING caused TBC to place an interstate

telephone call from Dallas, Texas to the telephone of "W.W." in the

District of Columbia, and caused TBC to leave a fraudulent hoax

*voicemail touting the stock of PWRM on the answering machine/voicemail system for W.W.*

52. *On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused TBC to place an interstate telephone call from Dallas, Texas to the telephone of "L.B." in the District of Columbia, and caused TBC to leave a fraudulent hoax voicemail touting the stock of PWRM on the answering machine/voicemail system for L.B.*

53. *On or about August 16, 2004, defendants JEFFREY S. MILLS, RODERIC L. BOLING and ANNA BOLING caused TBC to place an interstate telephone call from Dallas, Texas to the telephone of "A.B." in the District of Columbia, and caused TBC to leave a fraudulent hoax voicemail touting the stock of PWRM on the answering machine/voicemail system for A.B.*

54. *On or about the morning of August 18, 2004, defendants RODERIC L. BOLING and ANNA BOLING made several telephone calls to a toll free number from their home telephone in Altamonte Springs, Florida and ANNA BOLING recorded fraudulent hoax voicemail messages onto the onebox system for distribution by TBC which touted the stock of AMUT, TWTN, and PWRM.*

-101-

55.     *On or about the afternoon of August 18, 2004, defendants RODERIC L.*

*BOLING and ANNA BOLING made four telephone calls to a toll free*

*number from their home telephone in Altamonte Springs, Florida, and in*

*three of those telephone calls ANNA BOLING recorded fraudulent hoax*

*voicemail messages onto the onebox system for distribution by TBC which*

*touted the stock of AMUT, TWTN, and PWRM.*

56.     *On or about August 23, 2004, defendant JEFFREY S. MILLS caused the*

*brokerage account for Direct Results to sell 30,000 shares of IVFH stock*

*for approximately $7,196.*

The government need not prove that all of these overt acts were taken; but, to find a defendant

guilty, you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a

conclusion that a conspiracy existed. But it is up to the government to prove that such facts and

circumstances existed and lead to that conclusion in this particular case.

In deciding whether an agreement existed, you may consider the acts and statements of

all the alleged participants. In deciding whether the defendant became a member of that

conspiracy, you may consider only the acts and statements of that particular defendant.

In summary, a conspiracy is a kind of partnership in crime.  For any defendant to be

convicted of the crime of conspiracy, the government must prove three things beyond a

reasonable doubt: first, that during July 2004 and August 23, 2004 there was an agreement to

commit the crime of Securities Fraud or Wire Fraud; second, that the defendant intentionally

joined in that agreement; and third, that one of the people involved in the conspiracy did one of

the overt acts charged.

Authority:    Red book Instruction §4.93; United States Sixth Circuit Pattern Criminal Jury
              Instruction 3.06 (1991); see also United States v. Harris, 8 F.3d 943, 946-47 (2d
              Cir. 1993); United States v. Rogers, 118 F.3d 466, 478-79 (6th Cir. 1997); United
              States v. Lopez, 6 F.3d 1281, 1288 (7th Cir. 1993); United States v. Agofsky, 20
              F.3d 866, 870-71 (8th Cir. 1994) cert. denied, 513 U.S. 909 (1994); United States
              v. Martinez, 96 F.3d 473, 477-78 (11th Cir. 1996) cert. denied, 519 U.S. 1133
              (1997).

## **Unindicted, Unnamed, or Separately Tried Co-conspirators**

Some of the people who may have been involved in these events are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged and prosecuted or tried together in one proceeding.

Nor is there any requirement that the names of the all other conspirators be listed in the indictment. An indictment can charge a defendant with a conspiracy involving people whose names are not given, as long as the government can prove that the defendant conspired with one or more of them. Whether they are named or not does not matter.

Authority:    United States Sixth Circuit Pattern Criminal Jury Instruction 3.06 (1991); see also United States v. Harris, 8 F.3d 943, 946-47 (2d Cir. 1993); United States v. Rogers, 118 F.3d 466, 478-79 (6th Cir. 1997); United States v. Lopez, 6 F.3d 1281, 1288 (7th Cir. 1993); United States v. Agofsky, 20 F.3d 866, 870-71 (8th Cir. 1994) cert. denied, 513 U.S. 909 (1994); United States v. Martinez, 96 F.3d 473, 477-78 (11th Cir. 1996) cert. denied, 519 U.S. 1133 (1997).

## **Conspiracy - Venue**

Some of the events that you have heard about happened in other places.  There is no requirement that the entire conspiracy take place here in Washington, D.C.  But for you to return a guilty verdict in the conspiracy charge, the government must convince you that one of the overt acts took place here in the District of Columbia.

Unlike all the other elements of conspiracy that I have described, this is a fact the government only has to prove by a preponderance of the evidence.  This means the government only has to convince you that it is more likely than not that part of the conspiracy took place here.

Remember that all the other elements I have described must be proved beyond a reasonable doubt.

Authority:    United States Sixth Circuit Pattern Criminal Jury Instruction 3.07 (1991); see also United States v. Gaviria, 116 F.3d 1498, 1517 (D.C. Cir. 1997), cert. denied sub nom Naranjo v. United States, 522 U.S. 1082 (1998) (a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators); United States v. Lam Kwong-Wah, 924 F.2d 298, 301 (D.C. Cir. 1991), cert. denied, 506 U.S. 901 (1992) ((The government bears the burden of establishing by a preponderance of the evidence that venue is proper(; (venue is an issue that normally must be submitted to the jury(); United States v. North, 910 F.2d 843, 912 n.52 (D.C. Cir. 1990), op. modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990), cert. denied, 500 U.S. 941 (1991)  (District Court properly instructed jury to apply a preponderance-of-the-evidence standard to the question of venue).

# AIDING AND ABETTING

## Form Instruction 4.02

You may find *any of* the *defendants* guilty of the crime charged in the indictment without finding that s/he personally committed each of the acts that make up the crime or that s/he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal offender. It makes no difference which label you attach. The person is as guilty of the crime as s/he would be if s/he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated herself/himself with the commission of the crime, that s/he participated in the crime as something s/he wished to bring about, and that s/he intended by her/his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish her/his guilt. It is not necessary that you find that the defendant was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

-106-

I have already instructed you on the elements of each of the offenses with which the *defendants* are charged. With respect to the charge of Conspiracy to Commit Securities Fraud and Wire Fraud, regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with *criminal intent or conscious avoidance of the knowledge of criminal activity*. With respect to the charge of Securities Fraud, regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with *criminal intent or conscious avoidance of the knowledge of criminal activity*. With respect to the charge of Wire Fraud and Attempted Wire Fraud, regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with *criminal intent or conscious avoidance of the knowledge of criminal activity*. It is not necessary that all the people who committed the crime be caught or identified.

It is sufficient *to find a defendant guilty of aiding and abetting a crime* if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in committing the crime.

# WILLFULLY CAUSING AN ACT TO BE DONE

## Form Instruction 4.05

You may find the defendant guilty of the crime charged in the indictment without finding that s/he personally committed each of the acts constituting the offense or was personally present at the commission of the offense. A defendant is responsible for an act which s/he willfully causes to be done if the act would be criminal if performed by him/her directly or by another. To "cause" an act to be done means to bring it about. You may convict the defendant of the offense charged if you find that the government has proved beyond a reasonable doubt each essential element of the offense and that the defendant willfully caused such an act to be done, with the intent to commit the crime.

## CO-CONSPIRATOR LIABILITY

## Form Instruction 4.02A

**A.    When conspiracy is charged as a separate offense and the defendant is charged with a substantive offense committed by an alleged co-conspirator**

You have already been instructed as to the elements of the crime of conspiracy. Any of the defendants may be found guilty of the crime of wire fraud or securities fraud, which was allegedly committed by a co-conspirator of the defendant, even if that defendant did not participate directly in the acts constituting the offense. That is because a conspiracy is a kind of partnership in crime and its members may be responsible for each others' actions. A defendant is responsible for an offense committed by another member of the conspiracy if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a natural consequence of, the conspiracy. Before you may find the defendant guilty of securities fraud or wire fraud under this theory, you must find beyond a reasonable doubt:

1. That the offense of securities fraud or wire fraud was committed by a co-conspirator of the defendant;

2. That the defendant was a member of the conspiracy at the time the offense of securities fraud or wire fraud was committed; and

3. That the offense of securities fraud or wire fraud was committed during the existence of the conspiracy;

4. That the offense of securities fraud or wire fraud was committed in furtherance of the conspiracy; and

-109-

5. That the offense of securities fraud or wire fraud was a reasonably foreseeable consequence of the conspiracy. It is not necessary to find that the crime was intended as part of the original plan, only that it was a foreseeable consequence of the original plan.

## **Conscious Avoidance, or Deliberate Ignorance**

In deciding whether a defendant acted knowingly, you may infer that a defendant had knowledge of a fact if you find that he/she deliberately closed his/her eyes to a fact that otherwise would have been obvious to him/her. In order to infer knowledge, you must find that two things have been established. First, that defendant was aware of a high probability of the fact in question. Second, that the defendant consciously and deliberately avoided learning of that fact. That is to say, the defendant willfully made himself/herself blind to that fact. It is entirely up to you to determine whether he/she deliberately closed his/her eyes to the fact and, if so, what inference, if any, should be drawn. However, it is important to bear in mind that mere negligence or mistake in failing to learn the fact is not sufficient. There must be a deliberate effort to remain ignorant of the fact.

**Authority**:    First Circuit Pattern Jury Instructions, § 2.14; United States v. Gabriele, 63 F.3d 61, 66 n.6 (1st Cir. 1995), and United States v. Brandon, 17 F.3d 409, 451-52 n.72 (1st Cir.), cert. denied, 513 U.S. 820 (1994).  See also United States v. Alston-Graves, 435 F.3d 331, 338 (D.C. Cir. 2006 (recognizing deliberate ignorance instructions are "commonly given and commonly offenses").

# WHERE JURY IS TO BE CHARGED ON A LESSER INCLUDED OFFENSE OF A COUNT IN AN INDICTMENT

## Form Instruction 4.00

B.     Order of Considering the Charges

*You should consider first whether each defendant is guilty of Conspiracy to Commit Securities Fraud or Wire Fraud.  Regardless of whether you find all, some, or none of the defendants guilty of Conspiracy to Commit Securities Fraud or Wire Fraud, go on to the consider the next charge of Securities Fraud. Regardless if you find a defendant guilty of Securities Fraud go onto consider the charge of Wire Fraud.  If you find any of defendants not guilty of Wire Fraud, go on to consider whether that defendant or defendants is guilty of the charge of Attempted Wire Fraud.*

## **PROOF OF STATE OF MIND**

## **Form Instruction 3.02**

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of directly looking into the workings of the human mind. But you may infer the defendant's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by the defendant, and all other facts and circumstances received in evidence which indicate the defendant's intent and knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted.  It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.

## **"ON OR ABOUT" -- PROOF OF**

## **Form Instruction 3.07**


You will note that the indictment charges that the offenses were committed "on or about" *various dates in July and August, 2004.* The proof need not establish with certainty the exact date of the alleged offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

# <u>REASONABLE DOUBT</u>

As I have said many times, the government has the burden of proving the defendant guilty beyond a reasonable doubt.  Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty.  If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Authority: From Jury Instruction Proposed in <u>United States v. Antoine Jones</u>, 05-CR-386

## <u>REDACTED DOCUMENTS AND TAPES (if necessary)</u>

## Form Instruction 2.70

During the course of this trial, a number of exhibits have been received in evidence, including statements and portions of statements of witnesses or other persons. Sometimes only those parts of a document or tape recording relevant to your deliberations are received in evidence. Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted. Only the relevant parts have been received in evidence and will be made available to you. Thus, as you examine the exhibits, and you see or hear a statement where there appears to be omissions, you should consider only the relevant portions that have been received in evidence. You should not guess or speculate about anything that has been taken out.

## SELECTION OF FOREPERSON

### Form Instruction 2.71

When you return to the jury room, you should select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission -- to reach a fair and just verdict based on the evidence. Consider whether you wish to select a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

## **UNANIMITY**

## **Form Instruction 2.72**

The verdicts must represent the considered judgment of each juror. In order to return verdicts, each juror must agree to the verdicts. Your verdicts must be unanimous.

# **EXHIBITS DURING DELIBERATIONS**

## **Form Instruction 2.73**

I am sending into the jury room with you the exhibits that have been received in evidence. You may examine any or all of them as you consider your verdicts.

If you wish to see or hear those portions of audio or video recordings which I have admitted into evidence, please notify the clerk by a written note and we will assemble in the courtroom with the appropriate equipment.

## COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS

## Form Instruction 2.75

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me by any means other than a signed note and I will never communicate with any member of the jury on any matter touching the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person -- not the clerk, the marshal or me -- how jurors are voting until you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter. This means, for example, that you should never tell me that the jury is divided 6 to 6, for example, or 7 to 5, or 11 to 1, whether the vote is for conviction or acquittal or any other issue in the case.

## **FURNISHING THE JURY WITH A COPY OF THE INSTRUCTIONS**

### **Form Instruction 2.76**

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others. The fact that you have been provided a copy of my instructions should not discourage you from making an inquiry regarding the meaning of these instructions if necessary. Please return the instructions to me when your verdict is rendered.

# PARTIAL VERDICT

However, you do not have to reach unanimous agreement on all of the charges before returning a verdict on some of them. If you have reached unanimous agreement on some of the charges, you may return a verdict on those charges, and then continue deliberating on the others.

*To assist you in recording and returning your verdicts I have provided you with a verdict form to record your verdict once you have reached a unanimous verdict on any count or counts of the Indictment. The verdict form is intended only to assist you and I caution you that nothing in the verdict form is intended to suggest or convey any opinion by me regarding what the verdict should be. When you examine the form you will notice that it merely lists each count of the indictment and for each count of the indictment it contains a blank to record a verdict of either guilty or not guilty. Once you have reached a unanimous verdict on any count or counts, record that verdict by placing a check or an "X" in the appropriate blank or blanks. Before the jury returns to the courtroom to announce your verdicts, your foreperson should sign the verdict form on the line provided for his or her signature and fill in his or her jury seat number.*

*Let me describe briefly the procedure by which we will receive your verdicts. When you advise me through a note that you have reached a unanimous verdict on any count or counts, I will assemble all the parties and the courtroom staff. Once the parties and staff are all here, the jury will return to the courtroom. Your foreperson will be asked if you have reached a unanimous verdict. The clerk will ask for your verdict form and once I have examined the form, it will be returned to your foreperson and the foreperson will be asked to announce the verdict or verdicts. You will then be asked if the verdict as announced by your foreperson is your unanimous verdict. Either party is then entitled to a poll of the jury if they wish in order to be*

*sure that the jury's verdict is unanimous.  If a party requests a poll, the clerk will read your*

*verdict as recorded. Each juror will then be called by his or her seat number and  asked*

*individually if this is his or her verdict.  You should remain seated and you need only respond*

*yes or no when your seat number is called.*

Authority:     Based upon form Red Book instruction 2.92 and Jury Instruction

Proposed in <u>United States v. Antoine Jones</u>, 05-CR-386 (ESH)